COMMONWEALTH *vs.* PAUL L. MUCKLE
(and two companion cases[1]).

No. 01-P-12.

Suffolk. November 21, 2002. - October 17, 2003.

Present: BROWN, BERRY, & COHEN, JJ.

*Destruction of Property. Firearms. Practice, Criminal,* Instructions to jury, Presence of defendant, Challenge to jurors, Verdict. *Evidence,* Joint venturer, Value. *Joint Enterprise. Value.*

At a criminal trial, the judge's midtrial instruction to the jury regarding the defendant's absence from trial was error and, given the nondefinitive state of the evidence against the defendant and the judge's final charge (which included a consciousness of guilt instruction that rested exclusively on the erroneous midtrial instruction), substantially swayed the judgment of conviction, thereby requiring reversal. [634-639]

Statement of the protocol to be followed when a criminal defendant fails to appear midtrial. [639-640]

The evidence at the trial of indictments charging two codefendants with malicious destruction of property over $250 was sufficient to support liability for the codefendants both as principals and as joint venturers. [641-642]

The evidence at the trial of indictments charging two codefendants with malicious destruction of property over $250 was sufficient to permit the jury to conclude that the property injured, an automobile, had a value of more than $250; moreover, although the judge erred in referring to sentencing when instructing the jury that they needed to consider whether the property was worth more than $250 only if they found the defendant guilty, such error was rendered harmless by the judge's instruction that the jury was not to consider punishment. [642-643]

At a criminal trial, the exclusion of a single potential juror on a peremptory challenge did not, in the circumstances, raise an inference that the challenge was racially based. [643-644]

At the trial of indictments charging the defendant with malicious destruction of property over $250, possession of a firearm, and possession of ammunition, the jury's guilty verdict on the malicious destruction of property charge was not inconsistent with their deadlock on the illegal possession of a firearm and ammunition charges, and the defendant was not entitled to an instruction that the charges should all "stand or fall" together. [644-645]

INDICTMENTS found and returned in the Superior Court Department on February 24, 1998.

[1]The companion cases are against Ricardo Kirby.

The cases were tried before *Thomas E. Connolly*, J.

*Paul C. Brennan* for Ricardo Kirby.

*Paul L. Muckle*, pro se.

*Susanne Levsen Reardon*, Assistant District Attorney (*Seema Malik Brodie*, Assistant District Attorney, with her) for the Commonwealth.

BERRY, J. Codefendants Paul Muckle and Ricardo Kirby shot several bullets into a parked Volkswagen Jetta automobile. The shooting was both a warning to and an act of revenge against the Jetta's owner, who was Muckle's former housemate and who, according to Muckle, wrongfully was withholding Muckle's personal property as hostage to an overdue bill. Charged with malicious destruction of property over $250, possession of a firearm, and possession of ammunition,[2] Muckle and Kirby were tried to a jury. The jury eventually found Kirby guilty of all charges,[3] with Muckle guilty only of malicious destruction of property over $250.[4] Both Kirby and Muckle raise numerous claims of error. We affirm Muckle's conviction.

Complicating this trial as to Kirby was the circumstance that Kirby did not return to court following the second day's lunch break. One of the trial judge's midtrial instructions concerning Kirby's failure to appear, based on evidence not presented before the jury, improperly conveyed the judge's findings that Kirby was absent without cause, voluntarily and without leave of court. This midtrial instruction was error. There was also error in the related final instruction concerning consciousness of guilt. Accordingly, we vacate Kirby's convictions of malicious destruction of property and possession of a firearm.

We first address the practical problems occasioned under Mass.R.Crim.P. 18, 378 Mass. 887 (1979), when a defendant, present when trial commences, later absents himself. We then

---

[2]Muckle also was charged with intimidation of a witness.

[3]Although he requested review of all three convictions, Kirby's conviction of possession of ammunition was placed on file by consent and is not properly before us. *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975).

[4]At the close of the Commonwealth's presentation, the trial judge entered, with the Commonwealth's consent, a "not guilty" endorsement on the intimidation of a witness charge against Muckle. The jury failed to return a verdict on either the possession of a firearm or possession of ammunition charge, and those charges were dismissed.

set forth the procedures and protocol to be followed under rule 18 in these circumstances.

1. *Factual background.* Viewing the evidence in the light most favorable to the Commonwealth, the jury could have found the following facts. On January 6, 1998, Muckle telephoned Dennis Banton, his former roommate, and stated that Muckle wanted to pick up certain pieces of personal property that had been left at Banton's apartment during the few months Muckle had stayed there. Banton told Muckle he could not retrieve his belongings until Muckle paid his portion of the telephone bill. Muckle became angry, swearing and warning Banton about "what a bad boy could do." The call from Muckle's end was overheard and corroborated by Lavern Downie, a friend staying with Muckle. She further testified that, after ending the telephone conversation, Muckle told her that he was going to "get it [the property] back," that "he's going to kill someone if he has to," and that he was "going to bring a gun."

Later the same night, Banton, who was looking out his apartment's front window, saw Muckle (with one passenger) drive up the street in a gold Jaguar automobile sporting "BBS" gold rims. Banton had seen Muckle driving this Jaguar on previous occasions. The Jaguar stopped near Banton's building. Muckle got out of the car and pointed to Banton's white Volkswagen Jetta parked on the street. The passenger, whom Banton later identified as Kirby, then emerged from the Jaguar and fired several shots into the Jetta. Muckle and Kirby fled. The police arrived shortly thereafter, interviewed witnesses, collected shell casings, and retrieved the bullets lodged in the Jetta. Later that evening, Banton received another telephone call from Muckle, who stated, in a confirmatory reference, "See what a bad boy could do?"

The next day, Muckle voluntarily went to the police station and was interviewed. Muckle denied being involved in the shooting of the Jetta. Muckle admitted that he had driven to Banton's home in his Jaguar (alone, he said, not with a passenger) on the evening in question. According to Muckle, he argued with Banton and then returned home. Once there, he discovered that two friends from New York, whom he could identify only as "Tony" and "Jerry," had stopped by for a visit.

The two friends, upon hearing about the argument with Banton, left after asking to borrow Muckle's Jaguar. Muckle's implication was that the two friends had been involved in the shooting.

There was also testimony by Shalena Robinson, Kirby's long-time friend, that she helped Muckle and Kirby hide a gun at her house on the night of the shooting.[5] Thereafter, at Muckle's direction, Robinson removed the clip from the gun and hid it in her grandmother's back yard, disposing of the gun in a sewer. Ultimately, Robinson led the police to those places, where they recovered both gun and clip. Ballistics evidence established that the gun retrieved from the sewer had fired the bullets into the Jetta.

The defense — along the lines of the statement Muckle had given to the police — was that neither Muckle nor Kirby was involved in the shooting of the Jetta and, instead, the two friends from New York may have been the perpetrators. There was also countervailing testimony by two witnesses that the man who stepped out of the Jaguar and shot the Jetta was not Kirby.

2. *Instructions regarding Kirby's absence from trial.* Kirby failed to appear on the second day of trial. Following his disappearance, the judge gave defense counsel and the prosecutor an opportunity to investigate the reasons for his absence. Thereafter, the judge conducted a voir dire hearing to take evidence. A police officer testified that he had contacted all the local hospitals and police departments during the recess and that none had information regarding Kirby's whereabouts. Defense counsel also reported that neither he nor his office had heard from Kirby, and he had been unable to contact his client. The judge found, pursuant to rule 18,[6] that Kirby's absence was voluntary and "without cause," and he determined that the trial would continue.

---

[5]Robinson's testimony was given under an immunity grant pursuant to a nonprosecution agreement with the government.

[6]Rule 18(a)(1) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 887 (1979), provides as follows:

> "If a defendant is present at the beginning of a trial and thereafter absents himself without cause or without leave of court, the trial may proceed to a conclusion in all respects except the imposition of sentence as though the defendant were still present."

While the rule allows for continuing the trial in the defendant's absence, it

After the recess and voir dire, the judge informed the jury that Kirby was not present but that the trial would continue with Kirby represented by his attorney. There was no objection. Indeed, defense counsel correctly described the instruction as "as neutral as I can ask for." This stage of the matter, including the allowance for time to investigate the reasons for Kirby's disappearance; the holding of a voir dire hearing with evidence placed on the record; the judge's finding under rule 18 — not communicated to the jury — that the absence was without cause and voluntary (which finding was well supported by the evidence); and the judge's statement of a neutral jury instruction, was in accord with the protocol described in *Commonwealth* v. *Kane*, 19 Mass. App. Ct. 129, 135 (1984). See generally *Commonwealth* v. *Carey*, 55 Mass. App. Ct. 908, 908-909 (2002); Smith, Criminal Practice and Procedure § 1622 (2d ed. 1983 & Supp. 2003).

That was not the end of the matter. The next morning the judge, sua sponte, again raised the issue of Kirby's absence, stating to counsel in a side bar conference that, based on his analysis of certain cases, he intended to instruct the jury that he had made a determination, in a separate hearing, that Kirby had absented himself without cause and voluntarily. The judge reasoned that such an additional instruction was appropriate because the Commonwealth was entitled to argue in closing that Kirby's flight during the trial reflected consciousness of guilt.

Following the judge's announcement a colloquy ensued. The prosecutor, to his credit, expressed the view that, while the "[d]efendant's flight may be received as evidence of consciousness of guilt[,] . . . the Commonwealth had to have some type of foundation before we argue it in closing." The judge at first resisted taking evidence concerning Kirby's absence before the jury, noting that he had already conducted an evidentiary voir dire hearing. However, he eventually yielded on the point, offering the prosecution the opportunity to put in "whatever you want to put in." Defense counsel objected, in particular stress-

does not set forth the procedures to be followed when determining whether to do so. These procedural aspects are addressed in the case law, which is analyzed below.

ing that any additional jury instruction would be prejudicial and that the judge's instruction the preceding day had been sufficient to deal with the issues. The colloquy ended with the judge's determination that he would "stick with" the procedure he first outlined for instructing the jury of his finding concerning Kirby's failure to appear. The judge then gave the following instruction:

> "The [d]efendant Ricardo Kirby, yesterday at our lunch break, absented himself and has not yet returned to this trial and to this court. At a hearing outside of your presence, I have found his [absence] to be without cause, voluntary, and without leave of court. We are therefore proceeding on this case against both defendants to a conclusion in all respects."

Defense counsel again objected.

The instruction was error. In the first place, the instruction went beyond the neutral statements approved in the case law concerning a defendant's failure to appear during trial. As stated in *Kane*, a "jury may raise very damaging inferences from the bare fact that the defendant has somehow flown. This the judges recognize, and we find them warning juries wholly to disregard the fact." *Commonwealth* v. *Kane*, 19 Mass. App. Ct. at 136 (citations omitted). A second problem was that this midtrial instruction was given without any evidence having been adduced before the jury concerning the circumstances of Kirby's disappearance and the efforts to locate him. "Such information as there was about the circumstances of the absence had been imparted to the judge at bench conferences [and, here, in the voir dire hearing]; none of it was heard by the jury." *Ibid*. A judge, confronted with a disappearing defendant, may determine (after allowing time for investigation and the conduct of a voir dire hearing) that the prosecution should be permitted to present evidence to the jury concerning a defendant's midtrial absence in order to lay a foundation for a consciousness of guilt argument and jury instruction (as the assistant district attorney here thought). However, a judge may not simply hold a voir dire hearing, make a determination that the defendant's presence is without cause and voluntary, and then, ipse dixit, convey that

ultimate finding to the jury without any evidence being presented to the jury.

In this case, the error in the midtrial jury instruction was compounded in the final jury charge, wherein the judge gave a consciousness of guilt instruction. A distinction is in order: while this final charge was a correctly stated consciousness of guilt instruction, see generally *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982), and while such an instruction may appropriately be given where there is record evidence before the jury concerning the circumstances of a defendant's flight during trial, *Commonwealth* v. *Kane, supra* at 136-137, the error here is that the consciousness of guilt instruction should not have been given at all. There was no evidence before the jury on the issue of Kirby's disappearance, leaving the consciousness of guilt final instruction to rest exclusively on the erroneous midtrial jury instruction (which, in turn, rested on an extra-jury voir dire hearing) that Kirby was absent from trial "without cause, voluntar[ily], and without leave of court." "It is error to instruct a jury on consciousness of guilt based on facts without reasonable support in the record." *Commonwealth* v. *Haraldstad,* 16 Mass. App. Ct. 565, 570 (1983).

Given the objection at trial, we review the two interrelated errors to determine whether "the error did not influence the jury, or had but very slight effect." *Commonwealth* v. *Flebotte,* 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi,* 15 Mass. App. Ct. 437, 445 (1983). In this appellate scrutiny, reversal for prejudicial error generally is required unless we can "say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Ibid.* We cannot so say in this case. To the contrary, weighing the effects of both the erroneous midtrial instruction and the final consciousness of guilt instruction, we are of opinion that Kirby's substantial rights to a fair trial were affected, and that the errors warrant reversal of his convictions.

When viewed in isolation, parts of the evidence against Kirby seem relatively strong (including Banton's identification of Kirby and Robinson's testimony that Kirby enlisted her to hide the gun); however, when viewed within the context of the full

trial evidence, the incriminating nature of these parts is weakened by countervailing evidence. Points of counterweight included that Banton's identification was contested by two other eyewitnesses, both of whom testified they saw the shooter as he emerged from the Jaguar, and that that man was not Kirby. Further, Robinson's testimony implicating Kirby in the hiding of the gun was undermined by the fact that she was Kirby's ex-girlfriend and biased; had failed to disclose Kirby's involvement in hiding the gun in a series of police interviews; provided this incriminating evidence only after she may have been at risk for prosecution; and ultimately testified under an immunity agreement with the government.[7]

Given the nondefinitive state of the evidence, the erroneous midtrial instruction and the final consciousness of guilt instruction took on added significance. The midtrial instruction is very problematic: it was very powerful in effect because it was given by the independent figure in the courtroom, who bears the markings of authority. This instruction of law, informing the jury that the presiding judge had determined that Kirby's absence from trial was "without cause, voluntary, and without leave of court," perforce would have resonated with the jury, especially in light of the final consciousness of guilt instruction and the overarching charge that the jury "must take the law" as the judge gives it. See generally Massachusetts Superior Court Criminal Practice Jury Instructions § 1.5 (1999); Model Jury Instructions for Use in the District Court §§ 1.01, 2.01 (1997). In light of the foregoing, we conclude that the midtrial instruction "substantially swayed" the judgment of conviction, *Commonwealth* v. *Flebotte*, 417 Mass. at 353, and accordingly, we reverse Kirby's convictions.[8]

As is evident from the proceedings, the judge, prosecutor,

---

[7]Such immunized testimony requires a heightened level of corroboration. G. L. c. 233, § 20I. See *Commonwealth* v. *Dyous*, 436 Mass. 719, 727 (2002).

[8]Reversal of Kirby's convictions is separate and independent from Muckle's situation. The judge carefully excluded codefendant Muckle from the consequences of Kirby's absence and the related consciousness of guilt instruction, noting that "the absence of Mr. Kirby should not in any way be imputed to Mr. Muckle in any way." Furthermore, we do not see in the record prejudice spilling over to Muckle such as would warrant any setting aside of Muckle's conviction because of Kirby's trial in absentia.

and defense counsel all displayed a decided lack of clarity as to exactly what protocol to follow when Kirby failed to appear. All indicated they had not previously encountered the situation, and all turned for direction to rule 18 and its interpretative case law. However, the court and counsel found little procedural enlightenment in the relatively sphinx-like facade of rule 18, which merely states that, when the defendant absents himself without cause or leave of court, "the trial may proceed to a conclusion." Mass.R.Crim.P. 18(a)(1). See note 6, *supra.* Beyond that, the case law was subject to differing constructions, as interpreted by the judge, prosecutor, and defense counsel, each of whom divined a differing procedure to be followed in circumstances involving a defendant's failure to appear during trial.

We therefore restate the protocol to be followed. When a defendant fails to appear midtrial, the judge is to determine whether the trial should proceed in the defendant's absence or whether a mistrial should be declared. *Commonwealth* v. *Kane,* 19 Mass. App. Ct. at 136. In determining this question, the judge must determine whether the defendant's absence is without cause and voluntary. *Ibid.* Mass.R.Crim.P. 18(a)(1). This judicial determination, in turn, requires that there be time allotted for some measure of inquiry and investigation into the reasons for the defendant's absence and the results of the efforts to locate the defendant. To this end, the judge should grant a recess of such duration as the judge deems appropriate to allow for investigation.[9] There must be evidence introduced *on the record.* The preferable practice — and the practice that is generally controlling — is that a voir dire hearing should be held directed to the evidence garnered concerning the circumstances

---

[9]This investigation, in most cases, is not of the kind that would require a substantial amount of time or undue delay in the trial. A reasonably diligent investigation to determine if there is good cause for the defendant's absence from trial might entail some of the following steps: independent police inquiry; contact with the defendant's family and significant other persons in the defendant's life; calls to the places where the defendant lives and works; and inquiry of emergency health facilities in the immediate area where there is a reasonable probability the defendant may have been treated. Of course, defense counsel also should check to see if the defendant has communicated with counsel's law office.

of the defendant's failure to appear and the efforts to find the defendant.[10]

Following this hearing, the judge should state a finding concerning whether the defendant's absence is without cause and voluntary. If the judge determines not to declare a mistrial, but rather to continue the trial in absentia, then the judge should give a neutral instruction to the jury to the effect that the defendant may not be present for the remainder of the trial, that the trial will continue, and that the defendant will continue to be represented by his attorney. If there will be no evidence adduced before the jury concerning consciousness of guilt, the judge may add that the jury should not speculate as to the reasons for the defendant's absence and should not draw adverse inferences, as there are many reasons why a defendant may not be present for the full trial.

Conversely, if the prosecution seeks to bring before the jury evidence of the defendant's flight to lay a foundation for a consciousness of guilt instruction, the judge should determine (based on the evidence adduced on voir dire) whether introducing such evidence is warranted. If so, the prosecution briefly may develop the facts and circumstances of the defendant's failure to appear, subject to such discretionary limitations as the judge believes necessary. If the judge determines that a consciousness of guilt instruction is appropriate based on the evidence, and that this instruction will be incorporated in the final charge, that instruction should be stated in accord with *Commonwealth* v. *Toney*, 385 Mass. at 585, and cases cited therein — all as tailored to the defendant's failure to appear at trial. See generally Model Jury Instructions for Use in the District Court § 4.12 (1997).

---

[10]There may be special circumstances in which a judge decides, in order to avoid redundancy, that a voir dire hearing is not necessary prior to the prosecutor's introduction of evidence before the jury. For example, the judge may determine, based on an on-the-record conference with counsel, that the proffers of forthcoming evidence are sufficiently reliable to support direct evidence to be introduced before the jury. The problem, of course, is that proffers by counsel may not actually yield the type of evidence described in the proffer. Hence, the more conservative, and preferable, practice is the voir dire hearing described above.

3. *Sufficiency of the evidence concerning joint venturer liability.* Both defendants[11] concede that there was adequate proof that each had a sufficiently active role in the events to support individual liability as a principal. However, the defendants argue that the evidence was insufficient for each to be liable for the other's acts under joint venturer liability. From there, the defendants assert that because the jury did not differentiate in the general verdict between individual guilt as a principal and guilt based on liability as a joint venturer, the convictions should be reversed. In moving for required findings of not guilty, the defendants did not specify this joint venturer liability issue, nor did they object to the general verdict form on this basis. Given the lack of such specification, we review to determine whether there was error and, if so, whether the error gave rise to a substantial risk of a miscarriage of justice. *Commonwealth* v. *Melton,* 436 Mass. 291, 294 n.2 (2002). We conclude there was no error.

Where only a general verdict slip is submitted to a jury, a conviction will be affirmed provided there is sufficient evidence to sustain both theories, i.e., individual liability as a principal and joint venturer liability in a common criminal enterprise. *Commonwealth* v. *Maynard,* 436 Mass. 558, 561 (2002). A defendant can be convicted as a joint venturer if he was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Longo,* 402 Mass. 482, 486 (1988). Our review of the record convinces us that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support joint venture liability for the defendants both as principals (which the defendants concede) and as joint venturers. As to the later joint venturer theory of proof, "at the climactic moments the [defendants] consciously acted together in carrying out the criminal endeavor, each

---

[11]The arguments discussed here and in part 4, *infra,* relate to both Muckle and Kirby. Were we to determine — which we do not — that the evidence was insufficient, double jeopardy would bar a second trial against Kirby on the malicious destruction of property charge. *Corson* v. *Commonwealth,* 428 Mass. 193, 196-197 (1998). Given our determination, double jeopardy does not apply.

thereby becoming responsible for the acts of the other[]." *Commonwealth* v. *Fidler*, 23 Mass. App. Ct. 506, 513 (1987). See *Commonwealth* v. *Henderson*, 47 Mass. App. Ct. 612, 613-614 (1999) (defendant who had an ongoing quarrel with victim was culpable as joint venturer when passenger in vehicle defendant was driving got out and shot victim). In this case, the joint venture bore the earmarks of a plan executed by both defendants, who acted in combination in the shooting of, and malicious damage to, Benton's Jetta.[12]

4. *Sufficiency of the valuation evidence and related instructions.* A felony conviction for malicious destruction of property under G. L. c. 266, § 127, in contrast to a misdemeanor conviction, requires proof beyond a reasonable doubt that the damaged property had value in excess of $250. See *Commonwealth* v. *Beale*, 434 Mass. 1024, 1025 (2001); *Commonwealth* v. *Lauzier*, 53 Mass. App. Ct. 626, 635 (2002). As the defendants both suggest, and given that the vehicle suffered extensive damage to several different areas,[13] in these circumstances the property to be valued is the Jetta, considered as a whole. See *Commonwealth* v. *Pyburn*, 26 Mass. App. Ct. 967, 968-969 (1988) (extensive damage to structure and individual components of truck considered as whole). Compare *Commonwealth* v. *Walters*, 12 Mass. App. Ct. 389, 392 (1981). Compare *Commonwealth* v. *Cimino*, 34 Mass. App. Ct. 925, 927-928 (1993). So considered, the evidence was sufficient to permit the jury to conclude that the property injured, the Jetta, had a value of more than $250.

Banton testified that he bought the car three years before for $5,000 and still owed about $2,000 on the purchase loan. The defendants suggest that this valuation evidence was insufficient because the Commonwealth did not prove that the Jetta was driveable. Considered abstractly, whatever a car's condition, we

---

[12]The defendants cite *Commonwealth* v. *Green*, 420 Mass. 771 (1995), to support their argument that there was no joint venture liability. Unlike *Green*, in which the evidence demonstrated the culpability of only a single perpetrator, in the case at bar there was ample evidence of joint participation in the crime.

[13]Bullets were retrieved from within the engine compartment, near the radiator coolant reservoir, and from underneath the rear seat. Bullets also hit and left holes damaging the hood grill and the windshield. The latter holes were consistent, it appears, with the bullets' trajectory into the engine and car interior area.

doubt that direct proof of "drivability" usually will be necessary to establish its value as being more than the statutorily established $250 threshold, although the Commonwealth might wish explicitly to establish such fact in appropriate cases. Certainly the jury may apply their own "common sense" to this valuation issue. See *Commonwealth* v. *Hosman*, 257 Mass. 379, 385-386 (1926). In any case, and assuming the point has some tangential evidentiary worth, the jury reasonably could infer that the car was capable of being driven and still was in service from Banton's testimony that, on the day of the crime, he had parked the car on the right side of the street across from his apartment building. Considered from the record as a whole, therefore, the valuation evidence was sufficient.

The defendants also argue that the judge improperly encouraged the jury to consider the sentences that might be imposed when instructing that they "need[ed] to consider [whether the property was worth more than $250] only if you find the defendant guilty, so that I will know the range of sentence the law permits in this case." This is not an appropriate instruction, and we do not endorse this manner of placing the $250 valuation mark before the jury with respect to the felony threshold. Such a reference to sentencing or punishment is unnecessary, and it was error to introduce it. However, the error was countered, and rendered harmless, by the judge's clear instructions that the jury was not to consider punishment:

> "In deciding whether you should return a verdict of guilty or return [a] verdict of not guilty, please do not be concerned about the question of punishment. The punishment to be imposed should the defendant be found guilty is exclusively the responsibility of the court, namely mine, to determine. Please do not try and guess what the punishment might be, the issue of punishment should not enter into your consideration or discussions at any time."

5. *Peremptory challenge.* Both defendants argue — and the issue remains pertinent to Muckle's conviction — that the judge erred in failing adequately to address the defense objection to the prosecutor's use of a peremptory challenge to excuse a

black juror. On the record presented in this appeal, a prima facie showing of impropriety in exclusion of the juror has not been made. While excluding a single potential juror on a peremptory challenge may in some cases raise an inference that the challenge was racially based and, hence, improper, such an inference was not established here.[14] Having failed to make any showing that the challenge was improper, the presumption of propriety stands. See *Commonwealth* v. *Burnett*, 418 Mass. 769, 770-771 (1994); *Commonwealth* v. *Rivera*, 50 Mass. App. Ct. 532, 536 (2000).

6. *The differing verdicts on Muckle's indictments.* Muckle contends that the judge should have instructed the jury that the three indictments against him should all "stand or fall together." He posits that the guilty verdict against him on the malicious destruction of property charge was inconsistent with the jury deadlock on the illegal possession of a firearm and ammunition charges also lodged against him.[15] See note 4, *supra.* There was no error. A defendant is not entitled to an instruction that the charges should all "stand or fall" together. *Commonwealth* v. *Barry*, 397 Mass. 718, 726-727 (1986), citing *Commonwealth* v. *Corcione*, 364 Mass. 611, 616-617 (1974) (defendant not entitled to instruction that charges must be considered collectively). The defendant's claim that the verdicts were inconsistent also is unavailing. *Commonwealth* v. *Pike*, 52 Mass. App. Ct. 650, 656 (2001), quoting from *Commonwealth* v. *Graves*, 35 Mass. App. Ct. 76, 88 (1993) ("[i]nconsistency of

---

[14]We note in passing that the record shows that, after the prosecutor exercised the peremptory challenge, the juror ultimately selected for the subject seat, number nine, also was black. Neither party challenged this juror. At the end of the third day, when it was clear that the case was going to continue, the judge reluctantly excused this juror for employment-related reasons. The appellate record is bereft of any information concerning the composition of the remaining venire. The racial background of the two defendants and the victim also is less than complete. The only reference on this subject is a comment by the judge indicating that "both [d]efendants are dark men."

[15]In response to a jury question whether a "joint venture [may apply] to one count and not to another," the judge instructed, "Yes, a joint venture may be proven beyond a reasonable doubt as to one offense and not as to the other alleged offense."

Commonwealth v. Muckle.

verdicts in criminal cases is not a matter for judicial inquiry unless the inconsistent verdicts are impossible as matter of law").[16]

7. *Conclusion.* For the foregoing reasons, the judgment of conviction against defendant Muckle is affirmed. The judgments of conviction of malicious destruction of property and possession of a firearm against defendant Kirby are vacated, and those judgments are set aside. Although Kirby's conviction of possession of ammunition is not properly before us, see note 3, *supra*, this conviction suffers from the same infirmities as the other two. Accordingly, on Kirby's motion, the trial judge may, consistent with the foregoing, remove this conviction from its present status and grant such relief as may be appropriate. *Commonwealth* v. *Nowells*, 390 Mass. 621, 629-630 (1983).

*So ordered.*

---

[16]We have also considered Muckle's challenges that (a) his two-year jail sentence on the malicious destruction conviction constituted cruel and unusual punishment; (b) the Commonwealth had improper motives in bringing the criminal charges against him because Muckle had prevailed, he says, in having other convictions in unrelated cases overturned; (c) the judge erroneously disregarded information in a juror note and the prosecutor's sentencing recommendation; and (d) Muckle's conviction was the result of testimony obtained through monetary bribes. These arguments do not rise to the level of acceptable appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). However, even were we to accept the inadequate briefing, our review of the record persuades us that the arguments are without merit.