COMMONWEALTH *vs.* STEPHEN[1] M. JEAN-PIERRE.

No. 04-P-1292.

Middlesex. October 3, 2005. - November 23, 2005.

Present: GRASSO, DOERFER, & GREEN, JJ.

*Assault and Battery. Penalty. Practice, Criminal,* Sentence. *Statute,* Construction.

The evidence at the trial of a criminal complaint was sufficient to convict the defendant of assault and battery causing serious bodily injury, in violation of G. L. c. 265, § 13A, because "serious bodily injury" does not require permanent loss or impairment of a bodily function; moreover, the defendant's attorney was not ineffective in not requesting an instruction that loss or impairment of a bodily function must be permanent. [163-168]

COMPLAINTS received and sworn to in the Woburn Division of the District Court Department on February 24, 2003, and March 14, 2003, respectively.

The cases were tried before *Barbara Savitt Pearson,* J.

*Sharon Dehmand* for the defendant.

*Heather E. Hall,* Assistant District Attorney, for the Commonwealth.

GREEN, J. Under G. L. c. 265, § 13A, as amended by St. 2002, c. 35, § 1, an assault and battery is subject to enhanced penalties if it "causes serious bodily injury." See G. L. c. 265, § 13A(*b*)(i), (iii). The statute, in subparagraph (*c*), defines "serious bodily injury" to mean "bodily injury that results in a permanent disfigurement, loss or impairment of a bodily function, limb or organ, or a substantial risk of death." The defendant concedes that the blow he landed to the victim's jaw (which broke the jaw and required the victim to be fed through a tube for six weeks pending his recovery) impaired a bodily

---

[1] In the complaint received and sworn to March 14, 2003, the defendant's first name is spelled "Steven."

function. However, the defendant contends that the statute requires that any such impairment be permanent in order to constitute serious bodily injury. In other words, the defendant suggests that "permanent," as used in the statutory definition, modifies not only "disfigurement" but also "loss or impairment of a bodily function, limb or organ." We reject the defendant's contention and affirm his conviction on the charge of assault and battery causing serious bodily injury.[2]

In general, "a statute is to be interpreted 'according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' " *Commonwealth* v. *Welch*, 444 Mass. 80, 85 (2005), quoting from *Commonwealth* v. *Galvin*, 388 Mass. 326, 328 (1983). We begin, of course, with "the plain language of the statute," but we also draw guidance from the legislative history of the statute, "the language and construction of related statutes, . . . and the law of other jurisdictions." *Commonwealth* v. *Welch, supra,* and cases cited. See *Cooney* v. *Department of Mental Retardation*, 52 Mass. App. Ct. 378, 383 (2001) ("Sound principles of statutory construction make it desirable that our interpretation of provisions that have identical language and deal with essentially the same subject be uniform").

As a threshold matter, we consider a construction that applies "permanent" to modify only "disfigurement" to be the most natural and sensible reading of the sentence structure in the statutory definition.[3]

We also note that St. 2002, c. 35, which created the felony of

---

[2]We need not consider the defendant's challenge to the sufficiency of the evidence supporting his conviction on the charge of intimidation of a witness under G. L. c. 268, § 13B, because his conviction was placed on file. See *Commonwealth* v. *Gonzalez*, 443 Mass. 799, 800 n.1 (2005). To the extent that it bears on the defendant's conviction on the separate charge of threatening to commit a crime, under G. L. c. 275, § 2, we discern no abuse of discretion by the trial judge in allowing the Commonwealth to recall the victim to furnish additional testimony after the victim had already completed his initial testimony. See *Commonwealth* v. *Harmon*, 410 Mass. 425, 433 (1991).

[3]The definition of "serious bodily injury" in G. L. c. 265, § 13A(*c*), may be read to encompass either two or three discrete disjunctive elements. If there

assault and battery causing serious bodily injury, also amended G. L. c. 265, § 15A, by adding a provision for enhanced penalties where an assault and battery by means of a dangerous weapon causes serious bodily injury. See St. 2002, c. 35, § 2; G. L. c. 265, § 15A(c). The two subsections set forth substantially identical definitions of "serious bodily injury." See G. L. c. 265, §§ 13A(c), 15A(d). "We may turn to similar statutes to construe the meaning of words." *Commonwealth* v. *Cowans*, 52 Mass. App. Ct. 811, 816 n.2 (2001). In construing the term "dangerous weapon" in G. L. c. 265, § 15A, as in effect prior to the 2002 amendments, we have relied upon the common-law definition, treating as dangerous those weapons capable of causing serious bodily injury, and defining the requisite harm as "more than merely transient and trifling," but not necessarily "permanent." See *Commonwealth* v. *Lord*, 55 Mass. App. Ct. 265, 269 & n.7 (2002). "[A] statute should not be interpreted as being at odds with the common law 'unless the intent to alter it is clearly expressed.' " *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984), quoting from *Commonwealth* v. *Knapp*, 9 Pick. 496, 514 (1830).

The overall statutory scheme (set out in the margin), defining

---

are three, they are: (i) permanent disfigurement; (ii) loss or impairment of a bodily function, limb or organ; or (iii) a substantial risk of death. The single use of the conjunction "or," appearing before the last of those elements, conforms to the ordinary rule of grammar that a list of particulars is separated by commas and connected by a single conjunction. See Strunk & White, The Elements of Style 2 (3d ed. 1979). See also *Commonwealth* v. *Silva*, 21 Mass. App. Ct. 536, 541 (1986) (commas separating items in disjunctive series should each be read as standing in place of an "or"). But see Follett and Barzun, Modern American Usage 420 (1966) (better practice is to separate each member of series by semicolon when members themselves contain conjunctions or commas). The structure of the sentence alone suggests that "permanent" is not meant to modify the third element ("a permanent . . . a substantial risk of death").

The sentence might instead be construed to contain two disjunctive elements: (i) a permanent disfigurement, loss or impairment of a bodily function, limb or organ; or (ii) a substantial risk of death. Under that construction, however, "disfigurement" would need to have potential application to each of (a) bodily function; (b) limb; and (c) organ. However, "disfigurement" would then appear meaningless as applied to "bodily function." We instead construe the statute so as to give meaning to all of its terms, so that none is rendered meaningless or superfluous. See *Commonwealth* v. *Mendonca*, 50 Mass. App. Ct. 684, 687 (2001).

increasingly aggravated forms of assault and battery with concomitantly increasing penalties, also supports our interpretation.[4]

Our cases have held that to be convicted of even the most heinous of these crimes, mayhem, the victim's injury need not be permanent. See *Commonwealth* v. *Tavares*, 61 Mass. App. Ct. 385, 392 (2004), citing *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. 236, 246, *S.C.*, 379 Mass. 190 (1979) ("Subsequent recovery from an injury does not preclude a determination," under the first branch of mayhem, that the injury "disable[d] a limb or member"). Just as the word "permanent" was not read into the first branch of the mayhem statute, so, too, we decline to read it into the assault and battery statute before us. The second branch of the mayhem statute punishes "whoever, with intent to maim or disfigure, assaults another person with a dangerous weapon . . . and by such assault disfigures, cripples or inflicts *serious or permanent* physical injury . . ." (emphasis supplied). G. L. c. 265, § 14. It is thus apparent that the Legislature has indicated specifically when it meant to require proof of "*permanent* physical injury." It would also be anomalous if a greater ("permanent") injury were required to prove assault and battery causing serious bodily injury than to prove mayhem, a crime which carries a more severe penalty, but which does not require infliction of permanent injury. We

---

[4]At common law, the only battery short of mayhem was the misdemeanor crime of ordinary battery. Massachusetts, like other States, "responded by creating a series of intermediate offenses." Model Penal Code and Commentaries § 211.1 comment (1)(c), at 180 (1980). Thus:

G. L. c. 265, § 13A(*a*), assault and battery: maximum two and one-half years in house of correction or fine of $1,000;

G. L. c. 265, § 13A(*b*)(*i*), assault and battery causing serious bodily injury: maximum five years in State prison or two and one-half years in house of correction, or fine of $5,000, or both;

G. L. c. 265, § 15A(*b*), assault and battery by means of a dangerous weapon: maximum ten years in State prison or two and one-half years in house of correction, or fine of $5,000, or both;

G. L. c. 265, § 15A(*c*)(i), assault and battery by means of a dangerous weapon causing serious bodily injury: maximum fifteen years in State prison or two and one-half years in house of correction, or fine of $10,000, or both;

G. L. c. 265, § 14, mayhem: maximum twenty years in State prison or fine of $1,000 and two and one-half years in jail.

do not think the Legislature intended to confuse this statutory scheme by inserting in the statutes additional intermediate forms of assault and battery. Cf. *Commonwealth* v. *Goldman*, 5 Mass. App. Ct. 635, 637 (1977) (armed robbery, G. L. c. 265, § 17, "is but an aggravated form of common law robbery . . . distinguishable by the manner of punishment").

Our construction of the statute not to require permanent loss or impairment of a bodily function finds further support in the structure of two additional statutes addressing similar topics. General Laws c. 119, § 29C, as amended through St. 1999, c. 3, § 12,[5] defines "serious bodily injury" to mean "substantial risk of death, extreme physical pain, protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ or mental faculty." Repetition of the adjective "protracted" to modify separately "disfigurement" and "loss or impairment" suggests both that the two represent discrete examples of serious bodily injury, and that the Legislature modifies each element separately when it intends that the element should be modified, even if each is modified by the same adjective. Compare G. L. c. 265, § 13K(*a*), as inserted by St. 1995, c. 297, § 4,[6] which defines "[s]erious bodily injury" as "bodily injury which results in a permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ, or substantial risk of death." Again, the element of "disfigurement" is treated as separate from the element of "loss or impairment of a bodily function, limb or organ,"

---

[5]Under G. L. c. 119, § 29C, the department of social services, which is mandated to demonstrate that it has made reasonable efforts to maintain a child in her home before removing her therefrom, is excused from that requirement when the parent has been convicted of, inter alia, "an assault constituting a felony which resulted in serious bodily injury to the child or another child of the parent."

[6]General Laws c. 265, § 13K(*c*), imposes an enhanced penalty for an assault and battery upon a person sixty years of age or older or upon a person with a disability, when the battery results in serious bodily injury. The maximum penalty is ten years in State prison or two and one-half years in a house of correction, or a $5,000 fine, or both (the same penalty imposed for assault and battery by means of a dangerous weapon under G. L. c. 265, § 15A[*b*]).

and the two elements are specifically qualified by distinct (though different) adjectives.[7,8]

In its simplest terms, the manifest legislative purpose in specifying serious bodily injury as one form of aggravated assault and battery is to impose more severe penalties for assaults and batteries that result in more severe consequences to the victim. In construing the definition of "serious bodily injury" to include a broken jaw, our construction of the statute conforms to the treatment of such an injury uniformly reached in other States that have had occasion to consider the question. See, e.g., *Walker* v. *State*, 742 P.2d 790, 791 (Alaska Ct. App. 1987) (broken jaw, wired shut for six weeks, satisfied statute's definition of "serious physical injury" as one that "causes . . . protracted . . . impairment of the function of a body member or organ"); *State* v. *Miller*, 16 Ariz. App. 92, 94 (1971) (fractured jaw bone satisfied aggravated battery statute's requirement of "serious bodily injury"); *People* v. *Fosselman*, 33 Cal. 3d 572, 579 (1983); *State* v. *Landry*, 871 So. 2d 1235, 1239 (La. Ct. App. 2004) (where victim was knocked uncon-

---

[7]The legislative history of St. 2002, c. 35, reveals that Senate Bill No. 167, as originally filed, defined "serious bodily injury" to mean "bodily injury which results in a permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ, or a substantial risk of death." The word "protracted" was removed from the definition by motion before the bill was enacted. Its initial inclusion may be construed to support our view of the phrase "loss or impairment of a bodily function, limb or organ" as grammatically distinct from the other elements of "disfigurement" and "risk of death," and its removal prior to enactment may be viewed as reflecting a legislative election to reduce the duration or degree of loss or impairment required to satisfy the element.

[8]In light of our examination of the statutory language, *supra*, including our consideration of "the context of the entire statute in which the challenged words are used," *Commonwealth* v. *Panagopoulos*, 60 Mass. App. Ct. 327, 328 (2004), we reject the defendant's contention that the statute is unconstitutionally vague. "Only if the words used in a statute are so vague that a person of ordinary intelligence would have to guess at their meaning are they considered to be unconstitutionally vague." *Ibid.*, and cases cited. Moreover, we conclude "that the statute, on its face, sets out with sufficient clarity 'ascertainable standards of guilt.' " *Commonwealth* v. *Silva*, 21 Mass. App. Ct. 536, 541 (1986), quoting from *Winters* v. *New York*, 333 U.S. 507, 515 (1948). The plain meaning of the statutory language itself is sufficiently plain and unambiguous to advise a person of reasonable or common intelligence that loss or impairment of a bodily function need not be permanent in order to constitute serious bodily injury.

scious and suffered broken jaw, evidence was sufficient for conviction of second-degree battery, defined as, inter alia, "injury that involves unconsciousness [or] extreme physical pain"); *State* v. *Mentola*, 691 S.W.2d 420, 421-422 (Mo. Ct. App. 1985) (evidence sufficient to convict defendant under statute defining "serious physical injury" as, inter alia, one that "causes . . . protracted loss or impairment of the function of any bodily member or organ," where victim suffered broken jaw that was wired shut for six weeks); *State* v. *Houle*, 291 Mont. 95, 98 (1998); *State* v. *Capawanna*, 118 N.J.L. 429, 431-432 (Sup. Ct. 1937) (breaking of victim's jaw a "wounding" under "atrocious assault and battery" statute enhancing punishment for "maiming or wounding"); *Commonwealth* v. *Davis*, 267 Pa. Super. 370, 374-375 (1979) (where victim suffered multiple fractures of her jaw, which was wired shut for six weeks, evidence was sufficient for conviction under statute defining "serious bodily injury" as, inter alia, "protracted loss or impairment of the function of any bodily member or organ"); *Davis* v. *State*, 150 Tex. Crim. 131 (1947).

Because we reject the defendant's contention that loss or impairment of a bodily function must be permanent to meet the definition of "serious bodily injury" under the statute, we reject his claim that the evidence was insufficient to support his conviction on that charge. As the jury instruction his trial counsel submitted (and the trial judge administered) correctly construed the statute in that respect, we likewise reject the defendant's claim that trial counsel was ineffective for his failure to request an instruction that loss or impairment of a bodily function must be permanent.

*Judgments affirmed.*