COMMONWEALTH vs. WILLIAM BARO.

No. 07-P-364.

Middlesex. February 14, 2008. - November 24, 2008.

Present: KAFKER, TRAINOR, & SIKORA, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Practice, Criminal,*
Required finding, Instructions to jury, Lesser included offense, Question by
jury, Presence of defendant, Sentence. *Statute,* Construction.

At the trial of indictments charging the defendant with, inter alia, assault and
battery by means of a dangerous weapon causing serious bodily injury, the
judge properly denied the defendant's motion for a required finding of not
guilty, where the injury to the victim did not have to be permanent to be
"serious" within the meaning of G. L. c. 265, § 15A(*d*). [219-220]
At a criminal trial, the judge's instruction to the jury regarding a lesser
included offense, taken as a whole, properly imparted to the jury that they
were obliged to find guilt of the more serious offense so long as the Com-
monwealth had proved it beyond a reasonable doubt. [220-221]
A Superior Court judge had no duty to employ the protocol prescribed in
*Commonwealth* v. *Muckle*, 59 Mass. App. Ct. 631, 639 (2003), where the
criminal defendant was absent from the court room when the judge responded
to a question from the jury, which had already begun deliberation. [221-223]
A Superior Court judge did not abuse his discretion in sentencing the criminal
defendant, where the judge, who was not the trial judge, carefully considered
the pertinent trial record and the defendant's criminal history. [223-224]

INDICTMENTS found and returned in the Superior Court Depart-
ment on December 4, 2003.

The cases were tried before *Robert H. Bohn, Jr.,* J., and
sentence was imposed by *Jeffrey A. Locke,* J.

*James E. Methe* for the defendant.

*Kevin J. Curtin,* Assistant District Attorney, for the Com-
monwealth.

SIKORA, J. A Superior Court jury convicted the defendant,
William Baro, of assault and battery by means of a dangerous
weapon (concrete floor) causing serious bodily injury (aggravated
assault and battery), in violation of G. L. c. 265, § 15A(*c*)(i); of

assault and battery by means of a dangerous weapon (shod foot), in violation of G. L. c. 265, § 15A(*b*); and of assault and battery, in violation of G. L. c. 265, § 13A(*a*). On direct appeal Baro claims four errors: (1) that the judge improperly denied his motion for a required finding of not guilty on the charge of aggravated assault and battery; (2) that the judge misstated the law on a lesser included offense; (3) that the judge prejudiced him by answering a deliberating jury's questions in his absence; and (4) that substitution of a new judge for sentencing violated the standards of Mass.R.Crim.P. 38, 378 Mass. 916 (1979). We consider each contention. None is meritorious. We affirm the convictions.

1. *Background.* The evidence permitted the jury to find the following facts. Baro and codefendant John Meadows were inmates at the Billerica house of correction. They confronted another inmate. Meadows knocked the victim to the ground by a punch to his face and continued the attack by punching and kicking him. As a correction officer restrained Meadows, Baro punched the victim repeatedly in the head and face and kicked him with a shod foot. Baro had grabbed the victim by the hair with both hands and had driven the victim's head and face into a concrete floor seven to ten times before additional correction officers arrived and stopped the attack. The victim required hospitalization. He sustained multiple fractured bones on the right side of his face, an "orbital blow out fracture," extensive tissue damage and bleeding within both the right side paranasal sinuses and nasal cavity, and a temporary loss of sight in his right eye for about one and one-half months.

2. *Proof of assault and battery by means of a dangerous weapon causing serious bodily injury.* General Laws c. 265, § 15A(*d*), inserted by St. 2002, c. 35, § 2, defines the element of "serious bodily injury" as "bodily injury which results in a permanent disfigurement, loss or impairment of a bodily function, limb or organ, or a substantial risk of death." Baro contends that the adjective "permanent" applies to the ongoing phrases "impairment of a bodily function, limb or organ," and that the impermanent nature of the victim's impairments falls short of that necessary element of the offense.

Both grammar and precedent contradict that argument. Read

naturally, "permanent" modifies only the adjacent noun "disfigurement." It does not extend beyond the boundary line of the comma to modify the nouns "loss or impairment," and certainly not beyond the further comma to modify "substantial risk of death." We view each noun phrase bounded by commas to be parallel, independent expressions. See *Taylor* v. *Burke*, 69 Mass. App. Ct. 77, 81 (2007) (punctuation can assist the interpretation of a statute claimed to be ambiguous).

In addition, the decision of *Commonwealth* v. *Jean-Pierre*, 65 Mass. App. Ct. 162 (2005), established that an injury need not be permanent to be "serious" within the meaning of G. L. c. 265, §§ 13A(c) and 15A(d). See *Commonwealth* v. *Jean-Pierre, supra* at 162-164 (broken or fractured jaw is serious injury).

3. *Jury instruction.* As to the aggravated assault and battery indictment, the trial judge explained to the jury that they could find the defendant guilty of a lesser included offense of assault and battery by means of a dangerous weapon, without the presence of serious bodily injury. At the end of that instruction, he said: "You must, however, return a verdict of guilty to the highest crime contained in that count." Baro contends that those words improperly commanded the jury to find him guilty of the highest crime charged.

This contention ignores the principle that, in the assessment of instructions to the jury, the reviewing court examines the impact or impression of the charge as a whole upon the reasonably minded juror. See, e.g., *Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 (1968); *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980); *Commonwealth* v. *Manzelli*, 68 Mass. App. Ct. 691, 697 (2007).

Here, the instruction came immediately after the trial judge had charged the jury: "[I]f you are not convinced beyond a reasonable doubt that the defendant is guilty of the greater offense . . . and you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser included offense . . . you may return a verdict of guilty to the lesser included offense."[1] The reasonable meaning of the sentences as a whole was that

---

[1]The full passage ran as follows:

"The point I wanted to make here is that if you are not convinced beyond a reasonable doubt that the defendant is guilty of the greater

the jurors were obliged to find guilt of the more serious offense so long as the Commonwealth had proved it beyond a reasonable doubt. The instruction correctly stated the law. See *Commonwealth* v. *Serino*, 436 Mass. 408, 420-421 (2002). It was not an improper command.

4. *Defendant's absence.* After the beginning of the deliberation, Baro fled from the court house during a lunch recess. A default warrant issued during the afternoon. Police apprehended him five months later. Meanwhile the deliberating jury requested clarification of the elements of the offenses. Defense counsel objected to the return of the jury to the court room for supplemental instruction because the jurors would draw negative inferences from Baro's absence.[2] Counsel also requested that the trial judge not refer to the defendant's absence. The trial judge effectively overruled the objection to the return of the jury to the court room. He observed that the jury were unlikely to draw a prejudicial inference against Baro because at that time Baro's family and the court room personnel were absent also. The trial judge brought out the jury, answered their questions, and made no reference to Baro's absence.

Baro now argues that his absence was a prejudicial indication of consciousness of guilt to the jury. He reasons that the trial judge should have followed the protocol prescribed in *Commonwealth* v. *Muckle*, 59 Mass. App. Ct. 631, 639 (2003), for the situation in which "a defendant fails to appear *midtrial*" (emphasis supplied). The protocol attempts to implement the broad language of Mass.R.Crim.P. 18(a)(1), 378 Mass. 887 (1979):

> "*Defendant Absenting Himself.* If a defendant is present at the beginning of a trial and thereafter absents himself without cause or without leave of court, the trial may

offense, namely assault and battery by means of a dangerous weapon causing serious bodily injury, and you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser included offense of assault and battery by means of a dangerous weapon, namely the concrete floor, you may return a verdict of guilty to the lesser included offense. You must, however, return a verdict of guilty to the highest crime contained in that count."

[2]He proposed that the trial judge send written supplementation into the deliberation room.

proceed to a conclusion in all respects except the imposition of sentence as though the defendant were still present."

See *Commonwealth* v. *Muckle, supra* at 639-640.

The protocol directs the trial judge to determine between continuation of the trial in the absence of the defendant and the declaration of a mistrial. *Id.* at 639. That decision requires a finding whether the defendant's absence is "without cause and voluntary." *Ibid.* The judge should grant a recess for an expeditious investigation into the cause of the absence and for the results of a search for the defendant. *Ibid.* A voir dire upon those issues should create a record. *Id.* at 639-640. The judge should make a finding whether the absence is without cause and voluntary. *Id.* at 640. If the judge then decides to continue the trial in absentia, the judge should instruct the jury that the defendant may not be present for the remainder of the trial; and that his attorney will continue to represent him. *Ibid.* If no evidence of consciousness of guilt materializes, the judge may add that the jury should not speculate about the reasons for the absence nor draw any adverse inferences from it. *Ibid.* Baro argues that he was entitled to the benefit of this protocol as an application of rule 18(a)(1).[3]

For several reasons this defendant was not entitled to the protocol procedure. First, by its terms, that process applies rule 18(a)(1) to the disappearance of a defendant at "midtrial." Here the proceedings had passed well beyond that point into final deliberation. The evidence had closed and therefore so had the stage of proceedings at which Baro could be most helpful to his counsel and his case. Second, rule 18(a)(1) operates in tandem with Mass.R.Crim.P. 18(a)(3), 378 Mass. 888 (1979), which states: "*Presence Not Required.* A defendant need not be present at a revision or revocation of sentence . . . *or at any proceeding where evidence is not to be taken*" (emphasis supplied). If both sections of rule 18 are to function with compatible effect, the rule 18(a)(1) *Muckle* protocol will regulate disappearances before the completion of evidence; and the rule 18(a)(3) exception will

---

[3]Baro has not presented any additional arguments of a constitutional, statutory, or common-law nature. Nor has he identified any issue or favorable information for development in the protocol process as explanation for his disappearance.

govern disappearances after the close of evidence. In this rule 18(a)(3) instance, the trial judge had no duty to employ the protocol.[4],[5]

5. *Substitution of a judge for sentencing.* After the apprehension of Baro and removal of the default on June 23, 2005, the court scheduled the case for sentencing on July 21, 2005. The court rescheduled sentencing several times, twice at the request of Baro, to October 27, 2005. The judge who presided at the sentencing hearing was not the trial judge.[6] He sentenced Baro to a term of from seven to ten years in State prison upon the conviction of aggravated assault and battery; imposed a term of three years of probation from and after the completion of the committed sentence, upon the conviction of assault and battery by means of the shod foot; and placed on file the conviction of simple assault and battery.

---

[4]For a trial judge, the protocol process brings with it some burden and risk in jury management. A recess of even moderate duration can interfere with the jurors' focus on the evidence and expose them to speculation and extrinsic information about the delay. Rule 18(a)(3) recognizes the public interest in the completion of a proper trial and a reasonable limit to the entitlement of criminal defendants to account for unexplained absences. "[T]he Sixth Amendment right of confrontation of a defendant should not be exalted to the point of putting the orderly conduct of a trial at the mercy of [the defendant's] possible disinclination to face the prosecution." *Commonwealth* v. *Elizondo,* 428 Mass. 322, 325 (1998), quoting from *Commonwealth* v. *Kane,* 19 Mass. App. Ct. 129, 135 (1984).

[5]Although Baro has not made an explicit constitutional contention, the precedents indicate that such an argument would not alter the result dictated by rule 18(a)(3). A defendant begins trial with a right of presence "at all critical stages" embodied in the confrontation clause of the Sixth Amendment to the United States Constitution, the due process clause of the Fourteenth Amendment to the United States Constitution, and art. 12 of the Declaration of Rights of the Massachusetts Constitution (rights of confrontation, submission of evidence, and hearing in defense). See *Robinson* v. *Commonwealth,* 445 Mass. 280, 285 (2005), quoting from Mass.R.Crim.P. 18(a), 378 Mass. 887 (1979). However the trial judge may deem the defendant to have waived that right by voluntary departure, consent, or misconduct. See *id.* at 285-290. Accord, *Commonwealth* v. *Elizondo, supra* at 325-326 (where defendant disappeared after placement at bar but before beginning of evidence and judge permitted two-day search and then conducted hearing, judge properly found that absence was voluntary). At an evidence-generating "critical stage[]," the issue of waiver will require a hearing and findings. See *Robinson* v. *Commonwealth, supra* at 289. The hearing requirement does not extend categorically to nonevidentiary proceedings. See *id.* at 285-286.

[6]The trial judge had become unavailable by reason of illness.

In reliance upon Mass.R.Crim.P. 38(c), 378 Mass. 916 (1979), Baro argues that the sentencing judge committed reversible error because he did not certify in writing his familiarity with the trial record, had not reviewed the trial transcript (still uncompleted), and did not discuss the reason for the unavailability of the trial judge. Rule 38(c) does not require the new judge to certify his familiarity with the trial record; it allows substitution for a trial judge who "is unable to perform [his] duties" not only by reason of "death, sickness, or other disability," but also "by reason of absence [or] unavailability"; and vests the newly assigned judge with the "discretion" to order a new trial if he "is satisfied that he cannot perform [his] duties because he did not preside at the trial or for any other reason." Therefore we review for abuse of discretion the decision of the sentencing judge to proceed with the sentencing of Baro.

At the sentencing hearing, defense counsel and the prosecutor presented their versions of the trial record. Defense counsel specifically contended that the victim's injury was temporary, limited, and confined to the area of the victim's eye attributable to the codefendant's and not Baro's attack. The judge recognized that the extent of the victim's injury "could be a factor in sentencing." The prosecutor, only for the purpose of sentencing, stipulated that the victim had not suffered a permanent injury. Defense counsel conceded that the medical records submitted at trial provided the best evidence of the extent of the victim's injury. After considering the parties' versions of the trial record, the judge ruled that "there doesn't appear to be any significant material disagreement as to what the defendant was charged with, as to what the defendant's individual acts were, and as to the joint venture theory, and as well, the jury's verdict." He then accurately outlined the Commonwealth's case and the evidence presented at trial, and considered Baro's prior criminal record and probation department documents, including a number of letters on behalf of Baro. In sum, the record reflects the judge's careful consideration of the pertinent trial record and of Baro's criminal history. Baro has failed to show an abuse of discretion by the sentencing judge.

*Judgments affirmed.*