## COMMONWEALTH *vs.* ERROL FOREMAN.

No. 99-P-2139.

Suffolk. June 8, 2001. - September 11, 2001.

Present: LAURENCE, KANTROWITZ, & KAFKER, JJ.

*Abuse Prevention. Evidence,* Arrest record, Cross-examination, Impeachment of credibility. *Witness,* Impeachment.

At a trial on a charge of assault and battery, there was, in the circumstances, a substantial risk of a miscarriage of justice created by the introduction of documents issued two days after the defendant's arrest, including a G. L. c. 209A complaint, affidavit, and order arising out of the incident, which included printed statements regarding the court's determination that there was a substantial likelihood of immediate danger of abuse and its order that the defendant stay away from the victim and turn in his weapons. [512-518]

At a criminal trial, the judge did not abuse his discretion by not allowing the defendant to impeach the complainant with statements that she had made in letters that she wrote prior to the incident in question, where the defendant ultimately withdrew his request to admit the letters, apparently recognizing the strong inculpatory potential of numerous references to prior bad acts of the defendant contained therein. [518]

COMPLAINT received and sworn to in the Dorchester Division of the District Court Department on February 17, 1998.

The case was tried before *Joseph M. Walker, III,* J.

*Thomas E. Hagar* for the defendant.

*Rami M. Vanegas,* Assistant District Attorney, for the Commonwealth.

KAFKER, J. The defendant, Errol Foreman, went to the apartment of the mother of his soon-to-be-born child and told her he wanted nothing more to do with her. An argument and altercation ensued, and the defendant was arrested and charged with assault and battery. Two days later, the victim sought and received a restraining order pursuant to G. L. c. 209A. At the assault and battery trial, at which the defendant was convicted

by a jury, the Commonwealth introduced the 209A complaint, affidavit, and order arising out of the incident, which included printed statements regarding the court's determination that there was a substantial likelihood of immediate danger of abuse and its order that the defendant stay away from the victim and turn in his weapons. The defendant claims that a substantial risk of a miscarriage of justice was created by the introduction of the documents, the trial judge's limitations on his cross-examination of the victim, and ineffective assistance of his counsel. Because we agree that the admission of the 209A documents was error that created a substantial risk of a miscarriage of justice, we reverse.

1. *Facts regarding the altercation.* The Commonwealth introduced the following evidence at trial: On Valentine's Day, 1998, Ikeshia Headley repeatedly paged the defendant because she wanted to discuss whether he was going to help take care of the baby she was carrying. At the time Headley was eight and one-half months pregnant with the defendant's child. Although he did not return the beeper pages, the defendant arrived at her apartment two days later, on February 16. Headley described herself as "swearing at [the defendant], because he told me he didn't want nothing to do with me and the baby [and wanted me to] stop calling him and calling his house . . . . And then he asked me could he take a shower and I told him no."

At that point, Headley testified, the defendant became angry; he closed the door to the apartment, pulled her by her hair and threw her on the bed. He straddled her and slapped her face with his open hands. He then "tried to sleep with" her by lifting up her shirt and "sucking on [her] chest." When Headley told him no and to get off her, he took her house keys and went to take a shower. Headley then slipped out of the apartment and asked her neighbor to call the police. The police arrived and found Headley crying. She told them that her boyfriend had just beaten her up and she wanted him out of the house. The police knocked on the bathroom door, told the defendant to get out of the shower, and escorted him downstairs. The defendant was subsequently placed under arrest. Headley was taken to the hospital because she was having contractions.

At trial, the neighbor who called the police at Headley's

request testified to a conversation she had had with Headley earlier on the day of the incident. The neighbor stated that Headley had told her that "she wanted [the defendant] to go to jail because if he wasn't going to take care of her baby, . . . then he needed to be in jail." The neighbor also testified that Headley had complained about the defendant living with another woman.

2. *The 209A order.* Two days after the incident, the victim went to the Dorchester District Court to seek a restraining order against the defendant. The restraining order documents at issue consist of an affidavit signed by Headley, the complaint for protection signed by Headley, and the abuse prevention order signed by the judge. The affidavit recounted many of the same facts described above, including that she was eight and one-half months pregnant, that the defendant was the baby's father, that she had paged him on February 14 to discuss "whether he intended on helping me raise the child or on providing me with support," and that he had grabbed her by the hair, thrown her on the bed, gotten on top of her, and slapped her. The affidavit contained no mention of the defendant trying to "sleep with" her or the details thereof.

The court checked off that part of the abuse prevention order form providing "this order was issued without advance notice because the Court determined that there is a substantial likelihood of immediate danger of abuse," as well as the part that ordered the defendant "to immediately surrender to the Boston Police Department all guns, ammunition and FID cards." Headley's complaint for protection referenced the defendant's possession of a nine millimeter handgun. The court ordered the defendant "not to abuse the Plaintiff by harming, threatening, or attempting to harm the Plaintiff physically . . . or by using force, threat or duress to make the plaintiff engage in sexual relations unwillingly." The court further ordered the defendant to stay at least fifty yards away from Headley. The complaint for protection, the abuse prevention order, and the affidavit (referred to collectively as the 209A documents) were introduced in evidence by the Commonwealth without objection. The 209A documents were the only exhibit introduced at the two-day trial.

In its brief, the Commonwealth argues that the complaint for

protection and the affidavit were properly admitted as prior consistent statements of the victim to rebut the suggestion raised on cross-examination that she was motivated by vindictiveness arising out of her rejection by the defendant. The 209A complaint and affidavit do not, however, contain the type of prior consistent statements that are deemed admissible. To be admissible such statements must have been made before any motive to contrive existed in order to belie a charge of recent fabrication. *Commonwealth* v. *Binienda*, 20 Mass. App. Ct. 756, 759 (1985). See also *Commonwealth* v. *Healey*, 27 Mass. App. Ct. 30, 34-35 (1989); Liacos, Brodin, & Avery, Massachusetts Evidence § 6.16, at 341 (7th ed. 1999).

In the instant case, the defendant's rejection of Headley predated all of Headley's differing descriptions of the assault and battery at trial, including those contained in the 209A documents. *Commonwealth* v. *Binienda*, 20 Mass. App. Ct. at 759 (where prior consistent statement of robbery victim recounting the incident "was made *after* and not *before* the alleged motive to falsify testimony came into existence" it was inadmissible and prejudicial [emphasis in original]). If Headley were contriving the incident in order to avenge herself, then the 209A complaint and affidavit, as well as her trial testimony, would appear to be part and parcel of the same strategy.[1] The defense theory at trial was that all her descriptions of the assault and battery were similar contrivances motivated by her desire to avenge the defendant's decision to have nothing more to do with her.

We conclude that the complaint and affidavit fall within the general rule precluding prior consistent statements from being

[1] The Commonwealth recognizes that the statements must predate the motivation to contrive, but relies on *Commonwealth* v. *Kindell*, 44 Mass. App. Ct. 200, 203 (1998), which provides that "the application of these principles is not quite that mechanical . . . and the test should remain one of probative value — whether the prior consistent statement has a logical tendency to meet and counter the suggestion that the witness has recently contrived his testimony for purposes of trial." See also *Commonwealth* v. *Darden*, 5 Mass. App. Ct. 522, 529 (1977). The prior consistent statement exception, even as articulated in *Kindell*, does not provide for the introduction of the complaint and affidavit, which provide no insight beyond the trial testimony to counter the suggestion that all of Headley's accounts of the assault and battery are contrived.

used to "pump-up" a witness by demonstrating that she said the same thing on earlier occasions. *Commonwealth* v. *Kindell*, 44 Mass. App. Ct. 200, 203 (1998). Moreover, it is clear from the Commonwealth's questioning — repeatedly emphasizing that the statements were made under oath, under the penalties of perjury — that the prior statements were being used to establish the truth of matters asserted, which would be impermissible, even had they been admissible as prior consistent statements, *Commonwealth* v. *Kirk*, 39 Mass. App. Ct. 225, 229 (1995), and only served to exacerbate their prejudicial impact in this situation (as discussed below).

The Commonwealth's argument regarding the admissibility of the abuse prevention order is even less clear and is only presented in a footnote. The Commonwealth argues that the order is admissible as an official record, but correctly cites *Commonwealth* v. *Kirk*, 39 Mass. App. Ct. at 229, a decision of this court rejecting that proposition. The Commonwealth's attempt to distinguish *Kirk* by suggesting that the order in this case was admitted not to establish underlying disputed facts, but rather as proof that Headley took certain actions to keep the defendant away from her, is unconvincing in light of the thrust of the Commonwealth's questioning on redirect emphasizing that the statements were made under oath. Finally, the Commonwealth relies on the need to rehabilitate as articulated in *Commonwealth* v. *Errington*, 390 Mass. 875, 876-881 (1984), and *Commonwealth* v. *Richardson*, 423 Mass. 180, 187-188 (1996), to justify the admission of the order. Although the introduction of limited testimony that she sought and received a restraining order may have been justified by the reasoning in these cases, the introduction of the entire order, with all of the extraneous and prejudicial information contained therein, was not.

As the documents were nonetheless admitted without objection, we next consider their prejudicial effect to determine whether their admission created a substantial risk of a miscarriage of justice. The jury were presented with a judicial determination that there was "a substantial likelihood of immediate danger of abuse" of Headley by the defendant. He was ordered not to abuse her physically or force her to engage in

sexual relations. In addition to being dangerous, the defendant was depicted as having been armed. He was further ordered by the court to stay at least fifty yards from her.

The judicial imprimatur on the 209A order lends it significant weight. This is not just a filing in court but a determination by the court. Compare *Boston Herald, Inc.* v. *Sharpe*, 432 Mass. 593, 610 (2000). Furthermore, to a jury without more guidance, it would likely appear that a judge had already reviewed the facts and decided the credibility dispute that the jury were being asked to consider.

This case is distinguishable from those in which a 209A order has been properly introduced. In those cases, (1) the facts the jury had to decide in the criminal case before it were different from the facts that gave rise to the 209A order, and (2) there were other, legitimate reasons for the introduction of the 209A order. Compare *Commonwealth* v. *Gill*, 393 Mass. 204, 215 (1984) (restraining order demonstrating "[e]vidence of [prior] hostile relationship . . . may be admitted as relevant to the defendant's motive to kill"); *Commonwealth* v. *Leonardi*, 413 Mass. 757, 763 (1992) (no risk of substantial miscarriage of justice to allow 209A order prohibiting defendant from abusing former girlfriend to be admitted at defendant's trial for assault and battery of her new boyfriend where otherwise assault and battery would appear to be "an essentially inexplicable act of violence"); *Commonwealth* v. *Rodriguez*, 418 Mass. 1, 5 n.5 (1994) (error not to allow defendant claiming self defense in fatal stabbing of her boyfriend to introduce 209A order she obtained to demonstrate previous acts of abuse by victim); *Commonwealth* v. *Chartier*, 43 Mass. App. Ct. 758, 760 (1997) (evidence of prior misconduct reflected in 209A order may be received, "if it illuminates a pattern or course of conduct"). See also *Commonwealth* v. *Gilbert*, 366 Mass. 18, 27 (1974) (divorce document allowed to be introduced for purpose of showing murdered spouse's state of mind that she would not have voluntarily boarded boat with her estranged husband). In a number of these cases the relevant documents were of particular significance because the complainant was unavailable to testify at trial, as the defendant had killed her. See *Commonwealth* v. *Gill*, 393 Mass. at 215. See also *Commonwealth* v. *Gilbert*, 366

Mass. at 28. Compare *Commonwealth* v. *Kirk*, 39 Mass. App. Ct. at 229 (209A order, complaint, and affidavit not admissible even for the limited purpose of establishing the identity of boyfriend who was the subject of the order when Commonwealth presented no evidence that complainant was unavailable to testify at criminal trial). In this case, we have 209A documents addressing the same altercation that is the subject of the criminal prosecution.

This case is also readily distinguishable from those in which the 209A order was introduced because a subsequent violation of the order was the crime being tried. See, e.g., *Commonwealth* v. *Silva*, 431 Mass. 194 (2000). The order, in that context, was critical; in the instant case, it is superfluous. The facts in dispute in those cases were again different from the facts that gave rise to the order. Finally, determining whether a violation of a 209A order has occurred can raise difficult issues of interpretation requiring parsing of the text of the order, which are not present here. *Id.* at 195.

Nothing was done to lessen the prejudicial effect associated with the introduction of the 209A documents in this case. No cautionary or limiting instructions were sought or given. Compare *Commonwealth* v. *Gilbert*, 366 Mass. at 28; *Commonwealth* v. *Gill*, 393 Mass. 204, 217 (1984); *Commonwealth* v. *Jiles*, 428 Mass. 66, 73 (1998). But see *Commonwealth* v. *Leonardi*, 413 Mass. at 764 ("law does not require a judge to give limiting jury instructions regarding the purpose for which evidence is offered unless so requested by the defendant"). The jury were therefore not informed that the order was issued by the judge under the less stringent civil standard of proof by a preponderance of the evidence and not the criminal standard of proof beyond a reasonable doubt. Compare *Commonwealth* v. *Fallon*, 423 Mass. 92, 95 (1996). See also *Frizado* v. *Frizado*, 420 Mass. 592, 597 (1995).[2] There was also no attempt to redact any language in the abuse prevention order or the complaint for

[2]As noted earlier, the Commonwealth's questioning of Headley compounded the problem by stressing the similarities and not the differences between the 209A proceedings and the trial by asking Headley whether when she went before the judge was it "in a courtroom like this?" Headley responded it was "the same courtroom." The Commonwealth then asked whether there was someone like a clerk sitting at a desk. Headley responded, "she was there." The

protection from abuse.[3] Compare *Commonwealth* v. *Gill*, 393 Mass. at 217 (judge excluded "the face sheet of the [209A] order which contained language which he believed would be prejudicial to the defendant"). Nor was a more targeted approach adopted. If, for example, particular sections of the 209A documents were somehow demonstrated to be relevant and admissible, they could have been read to the jury with appropriate instructions without introducing the entire document. See *Commonwealth* v. *Gilbert*, 366 Mass. at 28 ("we think the better practice would have been to read portions of the [divorce document] to the jury which were pertinent to the defendant's state of mind and with appropriate instructions, instead of having the complete document introduced as an exhibit for continued examination in the jury room"); *Commonwealth* v. *Jiles*, 428 Mass. at 74 (1998) (error to admit entire witness statement as "[o]nly those portions of . . . written statement that were *consistent* with [that] testimony were properly admissible to rehabilitate him").

We conclude that the error of the admission of the 209A document is "sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error." *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999), quoting from *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986). The 209A documents were the only exhibits introduced at trial. The evidence of physical harm to the complainant was not obvious. The jury had difficult credibility determinations to make: the complaining witness had good reason to be angry with the defendant and admitted to being so; another witness called by the Commonwealth testified that Headley, on the very day in question, stated that the defendant should be in jail if he were not going to live up to his obligations to her and her child. In these circumstances, we conclude the introduction of the unredacted

---

prosecutor then asked, "Did you take an oath to tell the truth?" Headley responded, "Yes."

[3]In regard to the affidavit, a redaction was made with respect to a prior bad act, which apparently referred to an altercation months earlier between the defendant and Headley in which he allegedly placed a gun to her head. No other redactions were made or requested.

five pages of 209A documents was error that created a substantial risk of a miscarriage of justice.[4]

3. *Limitations on cross-examination.* The defendant also claims that the trial judge abused his discretion by not allowing him to impeach Headley with statements that she had made in letters that she wrote prior to the incident in question. However, it is evident from the trial record that the defendant ultimately withdrew his request to admit the letters, apparently recognizing the strong inculpatory potential of the numerous references to prior bad acts contained therein. This was an altogether reasonable tactical decision. We also note (with an eye toward a possible retrial) that a trial judge enjoys broad discretion to regulate the scope of impeachment evidence.

*Judgment reversed.*

---

[4]As we have reversed on these grounds, we need not address the argument that it was also ineffective assistance of counsel to fail to object to the introduction of the 209A documents and to allow the defendant to appear in prison garb on the first day of trial.