After a jury trial, the defendant, Hemchand Deodat, was convicted of the following: assault by means of a dangerous weapon (knife); assault and battery on a household member; and assault and battery by means of a dangerous weapon (ABDW), to wit a baseball bat.[2] On appeal, the defendant claims error from evidentiary rulings by the judge, namely the admission of opinion evidence as to the commonality of domestic violence victims delaying reporting abuse. The defendant also challenges certain remarks by the prosecutor in her closing. We affirm.
1. Background. We summarize the facts that the jury could have found, reserving some details for discussion of the legal questions before us. At all relevant times, Jane Smith[3] had been engaged to marry the defendant; the couple lived together in a Framingham apartment.
On January 19, 2015, the defendant woke Smith, ordering her to clean her son's bedroom (her son had just moved out). Smith said to the defendant that it was 2:00 A.M., that she "had to get up for work at [5:00 A.M.]," and that she would clean the room after her shift. She turned back over in bed to sleep. While she was asleep, the defendant hit Smith with a baseball bat. Smith asked the defendant "what was wrong, and why was he doing it." While the defendant was hovering over Smith with the bat in his hand, he told her to "[g]et the fuck up and clean the room right now." Smith retreated to another room in the apartment to avoid being hit again; the defendant pursued her. She tried to run down a staircase to the front door, however, the defendant "pulled [Smith] back by [grabbing her] hair," causing her to fall on the bottom step. He put a knife to her throat. The defendant pulled out "lots of" Smith's hair and threatened to kill her if she did not get back inside the apartment. Smith went to her son's room and soon thereafter fled from the home and ran to a nearby police substation, but it was closed. Smith, who was barefoot and clad only in a nightgown, went home. She approached the defendant and asked him to "try to work things out" while she looked for a place to live.[4] Two days later, using her cellular telephone's camera, Smith took photographs of her injuries.[5] She did not seek medical treatment.
The Commonwealth offered evidence to show that a separate incident of domestic violence had occurred in April, 2015. On that afternoon, upon returning home from work, Smith laid down to rest. She awoke when the defendant struck her with his cane. He told her: "[G]et the fuck up or there's going to be some bloodshed." He demanded that she cook his dinner.
On May 14, 2015, Smith and the defendant traveled to the South Middlesex Opportunity Council (SMOC) to apply for fuel assistance. At SMOC, in the presence of others, the defendant cursed and berated Smith. When Smith "put [her] hands up and said [she could not] take it anymore," SMOC personnel would not let her leave. They had her speak with a domestic violence representative and then with Framingham police Detective Stacey Macaudda. Smith, while crying and shaking, explained that she and the defendant had "agreed" to try to work things out until she found "somewhere" to live, but the abuse had continued.
2. Discussion. a. Opinion evidence. The defendant argues that the Commonwealth should not have been allowed to offer opinion evidence from Detective Macaudda on the issue of Smith's delay in reporting the incidents.
On direct, the Commonwealth briefly apprised the jury of Detective Macaudda's experience and training as an investigator of domestic violence crimes. Then, immediately after the judge and counsel conferred outside the presence of the jury,[6] the detective opined: it is "absolutely common" for victims of domestic violence to report crimes later than they occur.[7] Relying on Commonwealth v. Goetzendanner, 42 Mass. App. Ct. 637, 642 (1997), the defendant argues that this was impermissible expert opinion testimony that ought to have been excluded. In Goetzendanner, we held that "the pattern of behavioral and emotional characteristics common to the victims of battering lies beyond the ken of the ordinary juror and may properly be the subject of expert testimony." Ibid. See Commonwealth v. Morris, 82 Mass. App. Ct. 427, 430 (2012).[8] Here, the Commonwealth had failed to identify the detective as an expert in its pretrial submissions and also had not properly qualified her as such at trial. We assume but do not decide that the admission of the detective's "opinion" was error, notwithstanding other mitigating factors: that the contested opinion evidence was brief, succinct, and followed on the heels of an indiscernible sidebar conference. We hold that, assuming there was error, it "did not influence the jury, or had but very slight effect." Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).
First, the opinion testimony did not itself bear on any essential elements of the charged crimes. Rather, Smith's unequivocal testimony recounting in detail the defendant's conduct established all essential elements of the offenses for which the jury found guilt. Smith's account of the harm she had suffered at the hands of the defendant was properly admissible in all respects. Indeed, it was supported by photographic proof of Smith's injuries from the January attack.
Second, the challenged testimony was a fleeting reference about domestic violence victims generally, while there was also case-specific testimony about why Smith came forward when she did. When the defendant spoke to her abusively in front of others at SMOC, personnel at SMOC intervened. Only then, after Smith spoke to a domestic violence representative, did she go to the police. She testified: "I was scared. I was upset. I was nervous. I didn't put it in because I didn't want to get him in trouble. I just wanted to work things out. That's all I've been asking."
Third, the Commonwealth did forgo any further witness commentary as to the particular indicia of battered woman's syndrome. Compare Commonwealth v. Morris, supra at 432-433. Cf. Commonwealth v. Gordon, 87 Mass. App. Ct. 322, 333 n.13 (2015) (noting "complex phenomenon" of domestic violence). Nor did the detective repeat the narrative details presented by Smith herself. Moreover, defense counsel did not raise the lack of notice issue but instead ably cross-examined the detective.
Finally, the jury acquitted the defendant on the ABDW count involving a cane. The jury's rejection of this charge demonstrates that any error in the admission of the detective's opinion did not influence their dispassionate appraisal of the evidence. See Commonwealth v. Montez, 450 Mass. 736, 749 (2008).
b. Other evidentiary matters. The defendant also raises what he has described as "minor" errors: that the jury heard testimony that he was not employed, and that Smith had obtained a restraining order against him.[9] Substantially for the same reasons just discussed, there was neither any error nor any piling-on effect vis-à-vis the opinion evidence.
The Commonwealth is " 'entitled to present as full a picture as possible of the events surrounding the incident itself,' as long as the probative value of the evidence presented is not substantially outweighed by any prejudice to the defendant." Commonwealth v. Martinez, 476 Mass. 186, 191 (2017), quoting from Commonwealth v. Hernandez, 473 Mass. 379, 394 (2015). The defendant's employment status was relevant to corroborate that he could be home at the time of the second attack, a time when many would be at work. It also confirmed Smith's testimony that she asked the defendant for income verification at SMOC and that his abuse followed. In no event was the defendant's unemployment used to cast unfair judgment on the defendant's character. We discern no abuse of discretion in the admission of this evidence.
There was also a passing reference by Detective Macaudda that Smith had obtained a restraining order.[10] This brief statement was, amidst the whole trial testimony, inconsequential. The judge's instructions to the jury, delivered at the start of the trial and similarly in his final charge, made it quite plain that "the [criminal] complaint itself is not evidence of the defendant's guilt," and "[t]he fact that a complaint issued against the defendant should not be considered by [them] at all as any evidence of his guilt whatsoever in [their] deliberations." Here, the brief testimonial reference to a restraining order was linked to the criminal complaint, see note 9, supra, but the former was not admitted in evidence nor made mention of at any later time. Contrast Commonwealth v. Foreman, 52 Mass. App. Ct. 510, 513-515 (2001) (restraining order documentation admitted in evidence). We presume that the jury adhered to the judge's instructions. Their verdict strongly suggests as much.
c. Prosecutor's closing. The defendant contends that the prosecutor improperly vouched for Smith's credibility in her closing argument to the jury. The prosecutor stated:
"Now, you heard a lot about how [Smith] didn't-from the defense attorney how [Smith] didn't remember what the knife looked like in May when she reported the incident, but she testified to you today and she told you today what it looked like.
"And while it might [not] make sense that many months down the line how does your memory become better, a lot of times, especially with victims of such violent crimes, things settle down later. It settled down to her. She described the knife to you. She told you she hid all the knives because she was so afraid of the defendant."
Because the defendant did not object to this argument by the prosecutor, we review the alleged error for whether it created a substantial risk of a miscarriage of justice. See Commonwealth v. Jones, 471 Mass. 138, 148 (2015). The defendant has a considerable burden to demonstrate that an alleged error, or combination, by the prosecutor in closing argument, caused a substantial risk of a miscarriage of justice. Commonwealth v. Amirault, 424 Mass. 618, 650-651 (1997). "A mere possibility of a different outcome will not satisfy this burden." Id. at 652. We have considered the prosecutor's closing remarks, in the context of the entire case, including the judge's charge. We conclude that no substantial risk of a miscarriage of justice was created.
Judgments affirmed.

The jury acquitted the defendant of an ABDW charge that involved a cane.

A pseudonym.

Before approaching him, Smith took the kitchen knives, put them in a bag, and hid "them" in the snow outside.

The appellate record includes only the exhibit list, not the photographs admitted in evidence and shown to the jury.

The discussion was "indiscernible" to the court transcriber.

On redirect, the detective added that in "many of [her] cases that involve domestic violence, it takes time before somebody has the courage or the strength or the ability to come forward ... [s]o a lot of times [her] cases are reported much after the incident has taken place."

The defendant also relies on three out-of-State cases: Venalonzo v. People, 388 P.3d 868, 871, 880-881 (Col. 2017) (in case alleging defendant committed sexual assault on child, forensic interviewer offered impermissible expert testimony in guise of lay opinion without notice to defendant; error prejudicial); State v. Gonzalez, 150 N.H. 74, 77-80 (2003) (testimony about victim recantations was expert testimony erroneously admitted as lay testimony; error harmless); State v. Duran, 343 P.3d 207, 210-213 (N.M. 2014) (testimony by one who interviewed child disclosing sexual abuse was expert, not lay, opinion testimony; admission not harmless). These decisions are not controlling but, more importantly, each engages in the analysis we undertake here, i.e., whether the admission of the testimony was harmless. This is a fact-specific inquiry.

The defendant concedes that neither these errors nor the alleged improper closing argument, discussed infra, would alone warrant a new trial.

On direct, Detective Macaudda testified: "I conducted an investigation into domestic-violence charges and eventually did take charges out on someone, and I assisted [Smith] in getting a restraining order for protection."