NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-1036                                            Appeals Court

COMMONWEALTH  vs.  JEFFREY WHITE.

No. 22-P-1036.

Worcester.     September 14, 2023. – January 9, 2024.

Present:  Wolohojian, Shin, & Ditkoff, JJ.

Assault and Battery.  Practice, Criminal, Request for jury
    instructions.  Self-Defense.  Evidence, Self-defense,
    Credibility of witness.  Witness, Credibility.  Abuse
    Prevention.


Complaint received and sworn to in the Worcester Division
of the District Court Department on May 6, 2021.

    The case was tried before Andrew J. Abdella, J.


    Ann Grant, Committee for Public Counsel Services, for the
defendant.
    Danielle E. Borges, Assistant District Attorney, for the
Commonwealth.


    DITKOFF, J.  The defendant, Jeffrey White, appeals from his

conviction, after a jury trial in the District Court, of assault

and battery on a family or household member, G. L. c. 265,

§ 13M (a).[1]  We conclude the trial judge erred in denying the defendant's request for an instruction on self-defense, as the defendant testified that he pushed the victim away and fled while she was coming towards him with a broken beer bottle after hitting him with a dog leash.  Further concluding that evidence that the victim obtained an abuse prevention order subsequent to the criminal acts charged functioned as inadmissible evidence that the victim repeated her allegations and that a judge believed her, we vacate the judgment.

1.  Background.  a.  The Commonwealth's case.  The fifty-seven year old victim and the fifty year old defendant had been living together and in a romantic relationship for approximately fifteen years.  The relationship "went downhill" when the defendant started cheating on the victim.  On the evening of May 5, 2021, the defendant and the victim "started arguing," and the defendant -- who was the only person named on the lease -- instructed the victim to leave.  When she refused, he told her, "You're going to jail today," left the house, and called the police.

When the defendant returned to the house, the couple "started arguing, and he launched at [the victim] and knocked [her] on the floor and started strangling [her]."  The victim

---

[1] The jury acquitted the defendant of strangulation or suffocation, G. L. c. 265, § 15D (b).

wrestled with the defendant, eventually got away, and called the police herself.

The responding officer interviewed the defendant, who told the officer that the victim threatened him "with a bottle going toward a knife" and hit him with a dog leash. He stated that "he was threatened, and then eventually he ended up pushing her and grabbing at her jacket around the neck." The officer observed that the defendant appeared uninjured and the victim had "reddish marks around her neck."

The following morning, the victim went to the same District Court and applied for an abuse prevention order against the defendant "in front of a judge." Over objection, the victim testified that she obtained the order. Also over objection, the order was admitted in evidence. The exhibit consists of the initial order, which was granted on May 6, 2021, and signed by a judge, and a subsequent extension of that order, which was granted on May 24, 2021, and signed by a judge. At the top of the first page, the exhibit showed that the judge had checked the box next to a preprinted statement that the order was "issued without advance notice because the Court determined that there is a substantial likelihood of immediate danger of abuse." The judge ordered the defendant "not to abuse the [victim] by harming, threatening or attempting to harm the [victim] physically." The judge further ordered the defendant to "not

contact the [victim] . . . [and] to immediately leave and stay away from the [victim's] residence."

b. The defendant's case. The defendant testified that he and the victim had broken up a year prior to the incident but he had been allowing her to live in the house. This did not sit well with his new girlfriend, so he told the victim that she had to find a new place to stay within two months. He then discovered that the victim had posted on the social networking website Facebook that he was a child molester, so he told her she had to leave that night. "She grabbed a beer bottle, broke the beer bottle on the side of the bed, and told [him] that she wasn't going anywhere, that she was staying there." The defendant went downstairs, and the victim "followed [him] with the beer bottle in her hand." While the defendant and the victim were in the kitchen, the victim grabbed a thick metal dog leash off the counter and hit the defendant's shoulder with it. The defendant then noticed that the victim looked at a knife that was on the counter and, as she was approaching him, "[s]he went to reach for the knife." At this point the defendant "grabbed her by the collar" and "pushed her away." The defendant went outside and called the police.

2. Self-defense. Where, as here, nondeadly force is used,

"a defendant is entitled to a self-defense instruction if the evidence, viewed in the light most favorable to the defendant without regard to credibility, supports a

       reasonable doubt that (1) the defendant had reasonable concern for his personal safety; (2) he used all reasonable means to avoid physical combat; and (3) 'the degree of force used was reasonable in the circumstances, with proportionality being the touchstone for assessing reasonableness.'"

Commonwealth v. King, 460 Mass. 80, 83 (2011), quoting Commonwealth v. Franchino, 61 Mass. App. Ct. 367, 368-369 (2004). "The evidentiary threshold for a defendant seeking an instruction on self-defense is low, as it is the Commonwealth's burden to prove that the defendant did not act in proper self-defense once the issue is raised." Commonwealth v. Ortega, 480 Mass. 603, 610 (2018). The issue is preserved, as the defendant requested the instruction both in writing and orally.[2] See Commonwealth v. Arias, 84 Mass. App. Ct. 454, 463 (2013) ("when a judge refuses to give a requested instruction, a defendant's rights are saved without the necessity of a further objection"). "We therefore review to determine whether the failure to instruct was error, and if it was, whether the error was prejudicial." Commonwealth v. Graham, 62 Mass. App. Ct. 642, 651 (2004).

---

    [2] The defendant requested that the jury be instructed on self-defense during the charge conference and again during jury deliberations when the jury asked whether "it [is] reasonable to factor self-defense in the assessment of guilt within the legal definition of assault."

Viewing the evidence in the light most favorable to the defense of self-defense, see Commonwealth v. Tirado, 65 Mass. App. Ct. 571, 574 (2006), we conclude the defendant was entitled to a self-defense instruction. Here, according to the defendant's testimony, the defendant tried to leave when the victim threatened him with a broken beer bottle, but the victim followed him with the beer bottle and then hit him with a heavy, metal chain dog leash. When she reached for a knife,[3] he pushed her away and fled. On this evidence, a jury could find that the defendant had a reasonable fear for his safety as the person who had just struck him was armed with a broken beer bottle and was reaching for a knife. See Commonwealth v. Galvin, 56 Mass. App. Ct. 698, 700 (2002) (defendant's testimony that victim attacked her and was shoving her face adequate to raise reasonable doubt that defendant "had a reasonable concern for her physical safety"). Similarly, a jury could find that the defendant, who

---

[3] The defendant testified both on direct examination and on cross-examination that the victim reached for the knife and told the responding officer that she "went for a knife." We reject the Commonwealth's argument that, because the defendant also testified that he "saw her look at the knife," the jury had to find that she did not attempt to grab it. Putting aside the obvious truth that it would be difficult to reach for an item without looking at it, we consider the evidence in the light most favorable to the defense of self-defense, not (as the Commonwealth urges) in the light most favorable to the Commonwealth. See Tirado, 65 Mass. App. Ct. at 574 (defendant is entitled to self-defense instruction "[w]hen any view of the evidence suggests that [the] defendant may have acted in self-defense").

had already tried to retreat only to have the victim follow him, had availed himself of all reasonable means of retreat.  See Commonwealth v. Benoit, 452 Mass. 212, 227 (2008), quoting Commonwealth v. Pike, 428 Mass. 393, 398 (1998) ("This rule does not impose an absolute duty to retreat regardless of personal safety considerations; an individual need not place himself in danger nor use every means of escape short of death before resorting to self-defense").  The Commonwealth, quite properly, does not contest the proposition that a simple push in response to being threatened with a broken beer bottle and a knife was a proportionate response.  Accordingly, we conclude that the failure to instruct on self-defense constituted reversible error.

3.  Admission of the abuse prevention order.  Because the defendant objected to the admission of the abuse prevention order and the victim's testimony that she obtained it, we review for prejudicial error.  See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).  "An error is not prejudicial if it did not influence the jury, or had but very slight effect." Commonwealth v. Souza, 492 Mass. 615, 627 (2023), quoting Commonwealth v. Wolfe, 478 Mass. 142, 150 (2017).  To be sure, in other cases, the issuance of an abuse prevention order may be relevant and important evidence.  See, e.g., Commonwealth v. Rintala, 488 Mass. 421, 446 (2021) (existence of abuse

prevention orders obtained prior to murder "relevant and admissible to show motive and the hostile nature of the relationship between the defendant and the victim"); Commonwealth v. Sharpe, 454 Mass. 135, 144-145 (2009) (four abuse prevention orders obtained by victim admissible to demonstrate existence of hostile relationship and motive to kill); Commonwealth v. Butler, 445 Mass. 568, 575 (2005) (prior issuance of orders admissible in assault and battery prosecution to demonstrate existence of "a continuous hostile relationship"); Commonwealth v. Gonsalves, 99 Mass. App. Ct. 638, 640 (2021) (existence of order admissible in prosecution for stalking in violation of abuse prevention order); Commonwealth v. Watson, 94 Mass. App. Ct. 244, 245 (2018) (abuse prevention order admitted in prosecution for violation of that order).

Here, however, the Commonwealth did not need to establish the existence of an abuse prevention order as an element of the crime or to show the nature of the relationship prior to the crime.  Rather, the abuse prevention order had no uses other than to show that the victim repeated her allegations and that a judge believed her.  It is not proper to show a witness's credibility by demonstrating that someone else believed (or, for that matter, disbelieved) the witness.

The error is particularly significant here, as "[t]he judicial imprimatur on the [abuse prevention] order lends it significant weight. This is not just a filing in court but a determination by the court." Commonwealth v. Foreman, 52 Mass. App. Ct. 510, 515 (2001). Such an error effectively informs the jury "that a judge had already reviewed the facts and decided the credibility dispute that the jury were being asked to consider." Id.

Indeed, it is difficult to understand why even the fact that the victim requested an abuse prevention order was admissible here. "Prior consistent statements are 'generally inadmissible to corroborate in-court testimony or a witness's credibility.'" Commonwealth v. Lessieur, 472 Mass. 317, 323, cert. denied, 577 U.S. 963 (2015), quoting Commonwealth v. Saarela, 376 Mass. 720, 722 (1978). Requests for abuse prevention orders "fall within the general rule precluding prior consistent statements." Foreman, 52 Mass. App. Ct. at 513.

To be sure, "the use of prior consistent statements to rehabilitate a witness is permissible when a court finds that a party has claimed that a witness's in-court testimony is the result of recent contrivance or bias, so long as the prior consistent statement was made before the witness had a motive to fabricate or the occurrence of an event indicating a bias." Commonwealth v. Morales, 483 Mass. 676, 678 (2019), quoting

Commonwealth v. Caruso, 476 Mass. 275, 284 n.5 (2017). Accord Foreman, 52 Mass. App. Ct. at 514 (limited testimony that witness sought and obtained abuse prevention order may be justified to rehabilitate witness). Here, however, there was no suggestion that the victim's motive to fabricate arose after the request for the abuse prevention order. The defendant requested that the victim move out of the house, called the police to remove her, and described to the police an assault by the victim prior to her request for the abuse prevention order. See id. at 513 ("defendant's rejection of [the victim] predated all of [the victim's] differing descriptions of the assault and battery at trial, including those contained in the [abuse prevention order] documents").

Although the Commonwealth questions the prejudicial effect of the evidence regarding the abuse prevention order, the Commonwealth quite properly makes no argument that the omission of the self-defense instruction, if error, was not prejudicial. Accordingly, we need not reach the question whether the improper admission of the evidence regarding the abuse prevention order, standing alone, would require reversal of the conviction. See Commonwealth v. Santos, 460 Mass. 128, 138 n.12 (2011).[4]

---

[4] As the defendant points out, the nonresponsive testimony of the responding officer that he "came to a conclusion of the main aggressor in the situation, which was I came to a conclusion that it was the male, Jeffrey White" was improper.

4.  Conclusion.  The judgment is vacated, and the verdict is set aside.  The matter is remanded to the District Court for such further proceedings as may be appropriate.

So ordered.

---

See Commonwealth v. Quinn, 469 Mass. 641, 646 (2014).  We presume that, in the event of retrial, the officer will be instructed not to repeat this testimony.