NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-182

COMMONWEALTH

vs.

HENRY CRUZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the Superior Court, the defendant was convicted of assault and battery by means of a dangerous weapon causing serious bodily injury, assault and battery causing serious bodily injury, and assault on a family or household member. On appeal, the defendant claims the judge committed error in the admission of three unredacted G. L. c. 209A abuse prevention orders and in the failure to instruct the jury on specific unanimity and separate acts. The defendant also challenges the sufficiency of the evidence and claims the prosecutor improperly vouched for a witness during closing argument. We affirm.

Background.  On November 25, 2021, the defendant and the victim, who were in a dating relationship, attended a family Thanksgiving Day party.

Shortly before midnight, the couple left the party and, on the way to their home in Lawrence, got into an argument.  The victim, who had been consuming alcohol, did not want to leave and was frustrated with the defendant for wanting to leave the party early.  The victim remembered that while en route home, seated in passenger seat of the vehicle, she argued with the defendant about leaving the party and may have punched him while he was driving.  The victim's next memory was waking up in the hospital, looking "like this monster," unable to see out of one eye, with a broken nose, and according to the medical records, multiple contusions to her facial area, a lacerated lip requiring stitches, bruising, and a hematoma in the front scalp.

Around midnight, Lawrence police officers responded to a 911 call to the couple's home.  The defendant, who was shirtless, shoeless, and had blood on his neck, initially refused to allow the police officers into the home.  When the police did finally enter, a child led the police to the bedroom, where the victim lay unconscious in bed with serious injuries to her head, blood everywhere, and her eye swollen shut.  The police officers noted a scarf around the victim's neck.  The

2

victim was transported to the hospital in an ambulance and after some investigation, the defendant was taken into custody.  The defendant was later indicted for assault and battery by means of a dangerous weapon resulting in serious bodily injury in violation of G. L. c. 265, § 15A (c) (i) (count one); assault and battery resulting in serious bodily injury in violation of G. L. c. 265, § 13A (b) (count two); assault and battery on a family or household member in violation of G. L. c. 265, § 13M (a) (count three); attempted murder in violation of G. L. c. 274, § 6 (count four); and strangulation in violation of G. L. c. 265, § 15D (b) (count five).

The Commonwealth's theory at trial was that the defendant committed three separate assaults of the victim:  assault and battery causing serious bodily injury (count two) by kicking and punching the victim while she was near the vehicle; assault and battery by means of a dangerous weapon causing serious bodily injury (count one), attempted murder (count four), and strangulation (count five), when he used a scarf or shirt that he tied around her neck, leaving her unconscious; and assault and battery on a family or household member (count three) when he repeatedly struck the victim in the face while she was slumped on the stairs outside of her home.

The Commonwealth called six witnesses, including the victim and two eyewitnesses to the assaults. One of the eyewitnesses, Miriam Ayala, the victim's next-door neighbor, testified that sometime after midnight on November 26, she went outside to take out the trash when she heard the victim crying in pain and yelling. Ayala went across the street to the victim's parked car and found the victim lying on the ground outside the passenger door of the vehicle. The victim was covered in blood, and Ayala saw the defendant kicking her in the face. Ayala screamed at the defendant to stop. The defendant stopped kicking the victim and started punching her in the face and body. Ayala described the defendant as being intoxicated, and she screamed profanities at him to get him away from the victim, but the defendant then grabbed what Ayala described as a scarf, pulled it around the victim's neck, and strangled the victim. Ayala screamed loudly using profanities, covered the victim's body with her body, and the defendant finally stopped.

The second eyewitness, Lucero Cabrera, testified that she was parking her car in front of the victim's home when she saw a woman on the front steps with her head down. She saw a man punching or hitting the woman very hard, mostly in the head area. Cabrera saw that the man's shirt was covered in blood and

4

as she called 911, she saw the man carry the victim inside the home.

The defendant's theory at trial was that the victim, who was intoxicated, had become aggressive and accidently injured herself due to intoxication. The defendant testified that the victim had consumed alcohol at the Thanksgiving Day party and that he wanted to leave the party and return home. The defendant contended that as he was driving the couple home, the victim, who was angry at having to leave the party early, grabbed a bottle from the backseat of the car and repeatedly hit him in the head. The defendant arrived home and left the victim in the car while he went inside to clean the blood off himself. He returned to the car about forty minutes later to check on the welfare of the victim. He found the victim face down on the sidewalk with her legs still inside of the passenger side of the vehicle. The defendant testified that he and his neighbor, Ayala, helped the victim get across the street and assisted her inside the home and into bed. He testified that he never saw her face and was unaware of the severity of her injuries.

The jury acquitted the defendant of the charges of attempted murder (count four) and strangulation (count five) and found him guilty of the three assault and battery offenses. This appeal followed.

Discussion.  1.  Admission of the unredacted abuse prevention orders.  Prior to trial, the defendant filed a motion in limine to exclude prior bad act evidence and, in turn, the Commonwealth moved to introduce prior bad acts of the defendant including G. L. c. 209A abuse prevention orders issued on December 5, 2017, November 3, 2020, November 29, 2021.[1]  The judge denied the defendant's motion and allowed the Commonwealth's motion.  The three unredacted 209A orders were admitted at trial without objection.  On appeal, the defendant claims that he is entitled to a new trial because the orders were inadmissible propensity evidence that lacked probative value.  To be clear, the defendant does not challenge the admissibility of the victim's testimony regarding the prior violence she suffered by the defendant, but rather claims that the abuse prevention orders should not have been admitted in evidence.

At trial, the defendant did not object to the admission of the unredacted orders.  Nonetheless, on appeal the defendant claims that the issue was preserved by his motion in limine. That is not the case.  In Commonwealth v. Grady, 474 Mass. 715, 719 (2016), the Supreme Judicial Court held that a defendant

---

[1] We note that the November 29, 2021, restraining order was not a "prior" bad act as it was issued four days after the alleged crimes occurred.

6

need not "object to the admission of evidence at trial where he or she has already sought to preclude the very same evidence at the motion in limine stage, and the motion was heard and denied."  In order to preserve the issue for appeal, the motion in limine must be on the same ground as is raised on appeal.  See Commonwealth v. Santana, 477 Mass. 610, 620 n.7 (2017).  Here, while the defendant did file a motion in limine, it was not based on the same grounds raised on appeal.[2]

The defendant contends, for the first time on appeal, that the abuse prevention orders, especially the one dated November 29, 2021, were not relevant, were inflammatory and prejudicial, and improperly bolstered the victim's testimony, and it was error for them to be admitted.  See Commonwealth v. Foreman, 52 Mass. App. Ct. 510, 513-514 (2001).  "Because the defendant did not object at trial to the [evidence] . . ., 'we review his claims to determine whether there was error, and, if so, whether

---

[2] At the hearing on the motion in limine, the defendant's challenge to the 2016 and 2017 abuse prevention orders was that they were not contemporaneous in time, were uncorroborated, and were being used to bolster the victim's testimony because she had no memory of the events that occurred on the day of the crimes.  In fact, at the hearing, counsel for the defendant conceded that "the restraining order in 2020 is more time contemporaneous.  And, I would suggest that that may be something that is allowable to permit."  Counsel then urged the court to exclude all of the prior bad act evidence because the defendant and the victim had been in a relationship for twenty-one years and that "it's propensity evidence, Your Honor, versus probative value."

7

the error created a substantial risk of a miscarriage of justice.'" Commonwealth v. Cintron, 103 Mass. App. Ct. 799, 804 (2024), quoting Commonwealth v. Diaz, 100 Mass. App. Ct. 588, 596 (2022). "The substantial risk standard requires us to determine 'if we have a serious doubt whether the result . . . might have been different had the error not been made.'" Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005), quoting Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).

The Commonwealth counters that the orders were admissible because they demonstrated the defendant's intent, the nature of the defendant's and victim's relationship, and the absence of accident. "Evidence of a defendant's prior bad acts is not admissible to demonstrate the defendant's bad character or propensity to commit the crime charged." Commonwealth v. West, 487 Mass. 794, 805 (2021). However, such evidence "may be admissible to prove opportunity, intent, preparation, plan, knowledge, pattern of operation, or common scheme or course of conduct, as long as the probative value of the evidence is not outweighed by the risk of unfair prejudice" (citation omitted). Commonwealth v. Foreman, 101 Mass. App. Ct. 398, 408 (2022). Admitting 209A orders may be particularly prejudicial because the "judicial imprimatur on the 209A order lends it significant

weight. This is not just a filing in court but a determination by the court." Foreman, 52 Mass. App. Ct. at 515. See Commonwealth v. Reddy, 85 Mass. App. Ct. 104, 110 (2014) (acknowledging concern that restraining order containing judge's findings can lend itself to jury giving significant weight when assessing victim's credibility).

We need not engage in a detailed analysis regarding the admissibility of the 209A orders. Assuming, without deciding, that the admission of the unredacted orders was in error, the error, if any, did not create a substantial risk of a miscarriage of justice. References to the orders were fleeting and not repeated either during cross-examination or during closing argument by the prosecutor. Additionally, the prosecutor did not seek to include the affidavits filed in support of the restraining orders. Cf. Foreman, 52 Mass. App. at 517-518 (error to admit the 209A complaint, affidavit, and order). The defendant neither objected to the introduction of the evidence nor requested that the restraining orders be redacted. And the defendant does not challenge the admission of the victim's testimony regarding the defendant's prior abusive acts. Under these circumstances, it is difficult to discern how, even if the admission of the 209A orders was improper and

9

carried the added weight of judicial imprimatur, it may have resulted in different verdicts.

Moreover, there was considerable evidence supporting the Commonwealth's theory of the case, including the testimony of the two eyewitnesses who saw the victim being kicked, strangled, and beaten by the defendant; videotape surveillance footage that corroborated some of the eyewitnesses' testimony; the fact that the victim was transported to the hospital and suffered a swollen and bruised face, a lacerated lip, contusions to her head, and a broken nose consistent with the beatings; police testimony as well as photographs of the victim's injuries; and finally, the defendant's incongruous testimony that he did not cause the victim's injuries but that they were caused by her own intoxication -- despite the testimony of two eyewitnesses who saw his attacks on her and his behavior in refusing to allow the police to enter his home when they responded to the 911 call. We discern no substantial risk of a miscarriage of justice.

2. <u>Sufficiency of the evidence</u>. Next, the defendant claims that the evidence failed to establish the essential element of "serious bodily injury" in his convictions of assault and battery by means of a dangerous weapon causing serious bodily injury (count one) and assault and battery causing serious bodily injury (count two). "When reviewing the denial

10

of a motion for a required finding of not guilty, 'we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 162 (2019), quoting Commonwealth v. Faherty, 93 Mass. App. Ct. 129, 133 (2018).

The Commonwealth can prove "serious bodily injury," as defined in G. L. c. 265, § 15A (d), in one of three ways:  that the "defendant caused bodily injury that resulted either in (1) a permanent disfigurement; (2) loss or impairment of a bodily function, limb, or organ; or (3) a substantial risk of death." Commonwealth v. Scott, 464 Mass. 355, 357 (2013).  Loss or impairment of a bodily function does not have to be permanent to establish serious bodily injury.  Commonwealth v. Marinho, 464 Mass. 115, 118 (2013).  See id. (fractured nose, cheekbones, and eye socket causing blurred vision and double vision requiring reconstructive surgery sufficient to establish serious bodily injury).  See also Commonwealth v. Baro, 73 Mass. App. Ct. 218, 219-220 (2008) (punches and kicks to head resulting in broken bones and loss of sight for one and one-half months sufficient to prove serious bodily injury); Commonwealth v. Jean-Pierre, 65 Mass. App. Ct. 162, 162 (2005) (punches resulting in broken jaw

11

and several weeks of tube feeding sufficient to establish serious bodily injury).

Here, the jury heard testimony from Ayala, who recounted the defendant's motions in taking what she described as a scarf and tying it around the victim's neck and continually tightening it. At trial, using a scarf that she was wearing, Ayala demonstrated the defendant's actions for the jury. Moreover, Ayala described the defendant kicking and punching the victim while she was lying on the pavement near the vehicle. The victim testified that before the assaults she did not suffer a broken nose, but that she woke up in the hospital with a broken nose, swollen face, and unable to open one of her eyes. The jury were able to consider photographs of the victim's injuries and medical records confirming that she had suffered "a suspected nasal bone fracture." The jurors were also permitted to draw reasonable inferences from this evidence based on their own common sense and life experiences. Based on the evidence presented, we conclude as to count one that there was sufficient evidence for a rational jury to find that the defendant caused impairment of a bodily function, the victim's ability to breathe. Moreover, it was permissible for the jurors to conclude that the defendant's actions in taking an article of clothing and tightening it around the victim's neck caused a

substantial risk of death.  As to count two, the evidence when viewed in the light most favorable to the Commonwealth was that the actions of the defendant kicking and punching the victim in the face resulting in bone fractures, a hematoma, bruising, and a swollen eye, was sufficient to prove serious bodily injury.

3.  <u>Specific unanimity and separate acts instructions</u>. Next, the defendant claims that the trial judge's failure to provide specific unanimity instructions and separate acts instructions to the jury resulted in a substantial risk of a miscarriage of justice.  As to the failure to instruct on specific unanimity, the defendant reasons that because the jury found him not guilty of the strangulation charge (count four), then it was unlikely that the jurors were convinced beyond a reasonable doubt that he was guilty of assault and battery by means of a dangerous weapon causing serious bodily injury (count one) because it was based on the same evidence, namely tying the scarf or shirt around the victim's neck.  We disagree.

> "The purpose of a specific unanimity instruction is to ensure that where the jury are presented with evidence of 'separate, distinct, and essentially unrelated ways in which the same crime can be committed,' the jurors do not conclude that they may convict the defendant without unanimous agreement on which distinct theory of the crime applies."

<u>Commonwealth</u> v. <u>Gaughan</u>, 99 Mass. App. Ct. 74, 81 (2021), quoting <u>Commonwealth</u> v. <u>Arias</u>, 78 Mass. App. Ct. 429, 432

13

(2010).  Because the defendant neither requested such an instruction nor objected to the instructions as given, we review their absence for a substantial risk of a miscarriage of justice.

Here, the charges of strangulation and assault and battery by means of a dangerous weapon causing serious bodily injury are two separate offenses requiring different elements of proof. Moreover, the prosecutor in her closing statement articulated the acts underlying the charges of strangulation and assault and battery by means of a dangerous weapon causing serious bodily injury, and the judge specifically instructed the jury that the dangerous weapon in count one was a scarf or shirt.  Therefore, "it does not appear likely that the jury verdict would have been different even if the judge had given the specific instruction now requested by the defendant."  Commonwealth v. Comtois, 399 Mass. 668, 677 (1987).  We see no error in the judge's failure, sua sponte, to so instruct.

Moreover, even if we were to agree that a specific unanimity instruction should have been given, there was no substantial risk of a miscarriage of justice.  "Such a risk will not occur if the evidence is sufficient to meet the statutory elements and withstand a directed verdict motion."  Commonwealth v. Erazo, 63 Mass. App. Ct. 624, 630 (2005).  Because the

14

evidence was sufficient to support the defendant's conviction of assault and battery by means of a dangerous weapon causing serious bodily injury, a substantial risk of a miscarriage of justice did not result.

Nor did the judge's failure to instruct the jury on separate acts create a substantial risk of miscarriage of justice on counts one and two. Given the facts of this case, and the fact that the prosecutor clearly defined each separate act forming the basis of each count, there is no significant possibility that the jury may have relied on the same act as underlying both charges. A separate acts instruction was not required. See Commonwealth v. Kelly, 470 Mass. 682, 699-700 (2015).

4. Closing argument. For the first time on appeal, the defendant claims that the prosecutor improperly vouched for the credibility of a witness and, by using rhetorical questions, shifted the burden of proof to the defendant. We review to determine whether any error created a substantial risk of a miscarriage of justice.

The defendant focuses on the prosecutor's remarks in closing argument, that one of the eyewitnesses had no reason to lie, as impermissibly vouching for the witness. The prosecutor made the following remarks to the jury:

15

"I'd suggest Ms. Cabrera had no reason whatsoever to get involved unless she saw exactly what she told you.  She doesn't know these people.  Why would she call the police on Thanksgiving night at midnight with her 8-year-old daughter for no reason?  Does that make sense?  Or does it make sense that she saw exactly what she told you?

"Ladies and gentlemen, when people lie, they lie for a reason.  You might lie to your boss and tell him that you're sick because you got last minute tickets to Red Sox opening day and you want to go.  You might lie to your husband that the shoes that you got were on sale because you don't want that lecture about finances and overspending.  When people lie, they lie for a reason.  What possible reason or motive would Ms. Cabrera . . . have to come in here and lie about what [she] saw?  I'd suggest absolutely none."

This was not vouching or burden shifting.  Here, the prosecutor did not "express[] a personal belief in the credibility of a witness, or indicate[] that . . . she ha[d] knowledge independent of the evidence before the jury."  Commonwealth v. Wilson, 427 Mass. 336, 352 (1998).  Instead, she properly "ask[ed] [the] jury to rely on their common sense and life experience in assessing evidence and credibility."  Commonwealth v. Salazar, 481 Mass. 105, 117 (2018).  We discern neither error nor a substantial risk of a miscarriage of justice.  In context,

the prosecutor was properly responding to the defendant's claims that the eyewitness was unreliable.  See Commonwealth v. Fernandes, 478 Mass. 725, 743 (2018).

Judgments affirmed.

By the Court (Massing, Walsh & Brennan, JJ.[3]),

Clerk

Entered:  February 19, 2025.

---

[3] The panelists are listed in order of seniority.