*491 P.2d 481*

**STATE of Arizona, Appellee,**

v.

**Richard Lee MILLER, Appellant.**

**No. I CA–CR 318.**

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 9, 1971.

Rehearing Denied Jan. 6, 1972.

Review Denied Feb. 22, 1972.

Gary K. Nelson, Atty. Gen., by William P. Dixon and John Ryley, Asst. Attys. Gen., Phoenix, for appellee.

Gary M. Sundberg, Phoenix, for appellant.

HAIRE, Judge.

The appellant, Richard Lee Miller, was convicted of obstructing justice and aggravated battery after a jury trial. He was sentenced to a term of not less than three, nor more than five years, in the Arizona State Prison on the charge of obstructing justice and was sentenced to five years probation on the charge of aggravated battery. On appeal the appellant asserts that the trial court erred in failing to direct a verdict of acquittal on the charge of aggravated battery and assigns several errors which he contends entitle him to a new trial. Finding no legal basis for either claim we affirm.

The facts out of which this case arose relate to an incident involving the appellant and Officer Edwin Scott, a police officer for the City of Phoenix. Officer Scott was assigned to the Special Investigation Bureau, Narcotics Detail. On October 8, 1969, Officer Scott was at a drugstore conducting an investigation of the store's prescription files. The appellant entered the drugstore and purchased a syringe. Officer Scott, who was dressed in plain clothes, approached the appellant, identified himself verbally, and produced police identification. The officer spoke with the appellant regarding the syringe and copies of two traffic citations that he observed in the appellant's wallet when the appellant showed him his identification. The appellant explained that he was purchasing the syringe for a friend who was waiting outside. Officer Scott then stated, "Let's go outside and talk to the person waiting outside."

Officer Scott testified that upon arriving outside the drugstore, he asked appellant where his friend was and turned his head to glance around the parking lot and was struck by the appellant. The blow knocked the police officer to the ground and according to his testimony as he attempted to get up from the ground he was kicked in the head by the appellant. Further scuffling ensued and the officer testified that at that time he believed he told the appellant that he was under arrest. The appellant broke away and ran into the back room of a nearby bar. The police officer pursued him and there was further contact in the room. Under rather confused circumstances Officer Scott fired one shot from his service revolver that struck the appellant in the leg.

The physician who treated Officer Scott in the hospital emergency room testified that the police officer had a large bruise in the front of his left ear, an abrasion on his

hand and abrasions on his knees. X-rays showed a fracture of the jawbone.

■ Appellant's first question presented is whether the trial court erred in not directing a verdict on the charge of aggravated battery at the close of the state's evidence and at the close of all the evidence on the grounds that the evidence was insufficient to warrant a conviction. Appellant was charged with aggravated battery under A.R.S. § 13–245, subsec. A, par. 5 which states:

> "A. An assault or battery is aggravated when committed under any of the following circumstances:
>
> * * * * * *
>
> "5. When a serious bodily injury is inflicted upon the person assaulted."

Appellant contends that "serious bodily injury" occurs only when the resultant injuries are such as would give rise to apprehension of danger to life, health or limb. In support of this position appellant has directed our attention to Gonzalez v. State, 146 Tex.Cr.R. 108, 172 S.W.2d 97 (Texas Cr. App.1943). We agree with the Texas court's definition of "serious bodily injury" which has been best expressed as follows:

> "The rule is well settled that to constitute serious bodily injury the injury must be grave, not trivial—such an injury as gives rise to apprehension of danger to life, health or limb. It is not, however, required that the injuries be such as may result in death." Jackson v. State, 168 Tex.Cr.R. 51, 323 S.W.2d 442, 443 (Tex.Cr.App.1959).

We further agree with the Texas court's application of this rule and specifically note with approval the following quote from Davis v. State, 150 Tex.Cr.R. 131, 199 S.W. 2d 167, 168 (Texas Cr.App.1947):

> "It occurs to us that when a person receives a blow which fractures his jaw bone, that is rather a serious injury. Such an injury cannot be regarded as a trivial one since it may give rise to apprehension of danger to health. Whether or not it was a serious bodily injury was a question of fact for the jury, and we would not be authorized to interfere with the verdict of the jury unless it appeared from the evidence that the injury was not serious."

The injuries inflicted upon Officer Scott were of similar severity as those present in Davis. We believe as did the trial court, that the issue of whether the injuries constituted "serious bodily injury" was properly a question for the jury.

■ The appellant has also assigned as error the act of the trial court in permitting Lewis Carrel to testify as a rebuttal witness, arguing that the prosecution failed to establish a proper foundation for the impeaching testimony. The specific objection was that the prosecution failed to ask a proper "warning question" in that it failed to provide the appellant with sufficient particularity as to the date, time, place and persons present at the time the inconsistent statements were made. On cross-examination of the defendant by the County Attorney the following exchange took place:

"Q Now, when you were in the County Jail, Mr. Miller, do you remember meeting a fellow inmate named Lewis Carrel?

"A No.

"Q You did talk to people while you were in jail, didn't you?

"A Certainly.

"Q Do you remember talking to a man in the jail and telling him that you had hit and kicked the narc, and the reason you had done it was to give you time to swallow whatever you had on your possession?

"A No.

"Q You didn't say that to anybody in the County Jail?

"A No, sir, no sir.

"Q You are sure about that?

"A Positive.

"Q You didn't tell him that the reason you ran into the bar was to get rid of the rest of the stuff you had?

"A No, I didn't tell him that.

"Q You are sure about that?

"A Positive.

If you like, you can call witnesses from there right now to verify that.

"Q Verify that?

"A That I ever said anything about my case pertaining to the events like that. That is what I hired the attorney for."

Lewis Carrel was called as a rebuttal witness and the County Attorney questioned him. It was established that Carrel had been present on at least one occasion when the appellant was talking. He related that the conversation took place in the sick bay area of the county jail and that it was primarily between the appellant and an individual named Chito although Carrel participated to some degree. Carrel testified that the conversation took place on the morning of the 17th of October.

It has been stated that:

"The purpose of particularity is, of course, to refresh the memory of the witness as to the supposed statement by reminding him of the accompanying circumstances." C. McCormick, The Law of Evidence § 37 (1954).

Once the witness' memory has been adequately refreshed he may then admit, deny, explain away or disprove the statement. In our opinion whether the witness has been given adequate opportunity to avail himself of these alternatives rests within the sound discretion of the trial judge and his decision as to the adequacy of the foundation questioning cannot be disturbed on appeal except for manifest abuse of that discretion. The appellant was adequately apprised of the time, place, one of the persons present and the substance of his purported statement. In our opinion the trial judge ruled correctly and did not abuse his discretion in permitting the impeaching testimony. In view of the foregoing we do not reach the contention of the state that no "warning question" need be given where the witness whose testimony is to be impeached is himself the defendant in the case. State v. Hephner, 161 N.W.2d 714 (Iowa 1968); C. McCormick, The Law of Evidence § 37 (1954).

The third issue raised by appellant is whether the trial court erred in not instructing the jury *sua sponte* as to the elements of an arrest. The question as to the existence of a lawful arrest was interjected into the case through appellant's defense that the battery involved was a lawful resistance to an illegal arrest. It was appellant's testimony that the officer had tried to arrest him when the officer observed several traffic tickets in his wallet. This statement, if believed by the jury, would have shown the arrest to have been an unlawful attempt to arrest appellant for a misdemeanor not committed in the officer's presence and resistance by the appellant would thus have been justified. *See* Dugan v. State, 54 Ariz. 247, 94 P.2d 873 (1939). The officer, on the other hand, denied that he had placed appellant under arrest at the time the battery occurred. It is appellant's position that in light of the conflict in the evidence as to what occurred at the time of arrest it was error for the court not to give the following instruction *sua sponte:*

"An arrest is made by an actual restraint of the person to be arrested or by his submission to the custody of the person making the arrest. Any restraint, however slight, upon another's liberty to come and go constitutes an arrest."

We disagree. The appellant did not request the instruction defining arrest at the time of trial, therefore we need only consider whether the failure of the court to give the instruction *sua sponte* constituted fundamental error. State v. McAlvain, 104 Ariz. 445, 454 P.2d 987 (1969). The following instruction was given at defendant's request:

"An arrest by a peace officer, to be lawful, must be made when the police officer has probable cause to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it. An arrest without a warrant may also be made when the peace officer has probable cause to believe that

the person to be arrested has committed a felony or misdemeanor in his presence.

"A person illegally arrested may resist the arrest, using such force as may be reasonably necessary, short of killing the arresting officer.

"If you find that the defendant first struck Officer Scott following an unlawful attempt by Officer Scott to place the defendant under arrest, then you must find the defendant not guilty on the charge of battery."

This instruction fully apprised the jury of appellant's theory of the case. The question of arrest had been reduced to one of credibility and the jury simply chose to disbelieve appellant's claim that the officer had tried to place him under arrest prior to the battery.

■ The final question raised by appellant concerns the failure of the prosecution to disclose prior to trial a report of Officer Scott which contained the substance of the testimony of Mr. Carrel. The court had issued an order requiring the County Attorney to disclose "all recorded statements of the defendant or writings containing the substance of such statements". The existence of Mr. Carrel's testimony or the report containing the substance thereof was not made known to appellant until the morning Mr. Carrel was to testify. At that time defense counsel asked for and was granted a twenty-four hour continuance to depose Mr. Carrel prior to his testifying. While we cannot condone such noncompliance with the court's order by the County Attorney, in view of the continuance granted by the trial court, we do not believe that the trial judge abused his discretion in admitting such testimony, nor do we find any real prejudice to appellant's ability to prepare his defense.

The conviction is affirmed.

JACOBSON, P. J., and EUBANK, J., concur.