NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

PARIS ANTONIO NEALY, *Appellant*.

No. 1 CA-CR 25-0144
FILED 04-23-2026

Appeal from the Superior Court in Mohave County
No. CR-2024-00889
The Honorable Lee Frank Jantzen, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Jill L. Evans Attorney at Law, Flagstaff
By Jill L. Evans
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Angela K. Paton and Judge Jennifer M. Perkins joined.

_____

**C A T L E T T**, Judge:

¶1 Paris Antonio Nealy ("Nealy") appeals his conviction for aggravated assault resulting in serious physical injury. Nealy argues the State presented insufficient evidence that he caused a serious physical injury and the prosecutor engaged in misconduct. Because there was sufficient evidence from which a jury could find Nealy caused serious physical injury, and Nealy has not shown prosecutorial error causing prejudice, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 C.G. worked as a security guard at a library in Kingman. On April 22, 2024, while on duty, an employee informed C.G. that Nealy was smoking in the library. C.G. reviewed surveillance footage confirming Nealy was smoking. C.G. advised Nealy he had to smoke outside. Nealy got upset, so C.G. told him to leave. Nealy left and C.G. reported the incident to his supervisor.

¶3 Later that day, while C.G. remained on duty, a patron informed him that Nealy was outside the library. C.G. went outside to give Nealy his supervisor's business card. Nealy knocked C.G. backwards onto the concrete sidewalk. As C.G. got up, Nealy threw his bag on the ground and punched C.G. in the head, again knocking him onto the concrete. Nealy continued punching C.G. in the head. C.G. remained on the ground and moved between a bike rack and a short concrete wall. After he stopped punching C.G., Nealy picked up his bag and walked away.

¶4 A library employee took C.G. to the emergency room. The following day a specialist informed C.G. that his jaw was broken in two places and required emergency surgery. Medical staff wired C.G.'s jaw shut, so he could not move his mouth. This impacted C.G.'s ability to eat, drink, and sleep and caused him pain. C.G. also could not work until the wires were removed nearly three months later. At the time of trial ten

months later, C.G. still experienced soreness and difficulty chewing certain foods.

**¶5**        Officers detained Nealy the same day as the assault and observed blood on his hands and pants.  The State charged Nealy with: (1) aggravated assault causing serious physical injury ("count one"); (2) aggravated assault causing temporary but substantial disfigurement ("count two"); and (3) aggravated assault by use of a deadly weapon or dangerous instrument ("count three").  *See* A.R.S. § 13-1204(A)(1)–(3).

**¶6**        During trial, C.G. and one of the responding officers testified.  C.G. testified about his interactions with Nealy, the ensuing assault, and his resulting injuries.  The responding officer testified about his interactions with Nealy and C.G. after the assault.  The State introduced video surveillance footage of the confrontation inside the library and Nealy's assault outside.  The State also introduced photos showing C.G.'s injuries.

**¶7**        Nealy moved for a directed verdict on all three counts.  He argued the State failed to meet its burden of proof.  The court granted Nealy's motion as to count three, concluding there was insufficient evidence that Nealy used a dangerous instrument or weapon during the assault.  *See* A.R.S. § 13-1204(A)(2).

**¶8**        During closing arguments, the State discussed the elements of count one and defined a serious physical injury.  *See* A.R.S. §§ 13-105(39) (defining serious physical injury), 13-1204(A) (classifications of aggravated assault).  The State then argued that "by striking someone repeatedly in the head while that head is up against or near a concrete wall or sidewalk, there is a reasonable risk of death."  To explain how the evidence supported a finding that C.G.'s injuries caused a "serious physical injury," the State summarized the extent and duration of C.G.'s injury.

**¶9**        The court instructed the jury that statements from counsel are not evidence and on the elements of proof for both remaining counts.  The court instructed that aggravated assault causing serious physical injury requires proof that "[1] [t]he defendant committed an assault; and [2] [t]he assault was aggravated by. . . [t]he defendant caus[ing] serious physical injury to another person."  The court also instructed the jury that a serious physical injury "includes physical injury that creates a reasonable risk of death, or that causes serious and permanent disfigurement, serious impairment to health or loss or protracted impairment of the function of any bodily organ or limb."

¶10 The jury convicted Nealy on both remaining counts. A.R.S. § 13-1204(A)(1), (3). The court sentenced Nealy to six years' imprisonment on count one and two years' imprisonment on count two, to run concurrently.

¶11 Nealy timely appealed. We have jurisdiction. A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4033(A)(1).

## DISCUSSION

¶12 Nealy appeals only his conviction on count one for aggravated assault causing serious physical injury. A.R.S. § 13-1204(A)(1). He makes two primary arguments. One, the State presented insufficient evidence that C.G. suffered a "serious physical injury." Two, the prosecutor engaged in misconduct when explaining the law and facts during closing arguments.

### I. Insufficient Evidence

¶13 We review the sufficiency of the evidence de novo, viewing all facts and resolving all evidentiary conflicts to support the verdict. *State v. Pena*, 235 Ariz. 277, 279 ¶ 5 (2014). We determine only whether substantial evidence supports the verdict. *Id.* "Substantial evidence is more than a mere scintilla and is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Ellison*, 213 Ariz. 116, 134 ¶ 65 (2006) (citation omitted). "The substantial evidence required to support a conviction may be direct or circumstantial," and we do not "reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact." *State v. Teagle*, 217 Ariz. 17, 27 ¶ 40 (App. 2007); *State v. Barger*, 167 Ariz. 563, 568 (App. 1990). We reverse "only where there is a complete absence of probative facts to support the conviction." *State v. Allen*, 253 Ariz. 306, 341 ¶ 109 (2022) (citation omitted).

¶14 To convict Nealy for aggravated assault causing serious physical injury, the State had to prove beyond a reasonable doubt that (1) Nealy intentionally, knowingly, or recklessly committed an assault, and (2) the assault caused "serious physical injury" to C.G. A.R.S. §§ 13-1203, -1204(A)(1). A serious physical injury "includes physical injury that creates a reasonable risk of death, or that causes . . . serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." A.R.S. § 13-105(39).

4

¶15        The State presented evidence that Nealy's assault broke C.G.'s jaw in two places. Those fractures required emergency surgery to install wires to allow C.G.'s jaw to heal properly. C.G. wore a wire device on his jaw for three months, during which he could not move his mouth. This impacted his ability to eat, drink, sleep, and work. Even ten months after the assault, C.G. still experienced impairment in the form of soreness and difficulty chewing certain food.

¶16        In *State v. Mwandishi*, 229 Ariz. 570 (App. 2012), we affirmed a conviction for aggravated assault causing serious physical injury. In that case, the perpetrator broke the victim's orbital bone. *Id.* at 570 ¶ 2. We concluded that injury was a "protracted impairment of the function of any bodily organ or limb" because the victim's injury could not heal normally without surgery and the victim "continue[d] to experience side effects from the injury that impair[ed] the function of her eye[.]" *See id.* at 572 ¶ 10.

¶17        Based on the evidence that C.G.'s injuries would not heal normally without surgery to wire his jaw shut, and that C.G. spent three months recovering and still experienced some impairment months later, a jury could reasonably conclude that Nealy's assault caused C.G. a "protracted impairment" (i.e., a serious physical injury). *See State v. Dodd*, 244 Ariz. 182, 186–87 ¶ 16 (App. 2017) (jurors could use "their collective common sense" to conclude that a "broken and dislocated femur and hip socket" requiring surgery at a "high-level trauma center" were protracted impairments); *cf. State v. Cooke*, 259 Ariz. 45, 52–53 ¶¶ 33, 41 (App. 2024) ("substantial evidence would allow a properly-instructed jury" to find a "serious physical injury" when a "shattered" shin from a gunshot required two surgeries and the victim spent several months in recovery); *State v. Miller*, 16 Ariz. App. 92, 93-94 (1971) (the jury could decide whether there was a "serious bodily injury" when the defendant broke an officer's jaw).

¶18        Nealy relies on *State v. George*, 206 Ariz. 436 (App. 2003), for his argument that there is insufficient evidence to find a "serious physical injury." In that case, we concluded that a gunshot wound causing two days of impaired mobility did not support a finding of a "serious physical injury." *Id.* at 442–43 ¶¶ 13–14. *George* reasoned that a "serious impairment of health" must be graver than the "usual temporary impairment caused by [a] fracture," and a "protracted impairment" of an organ or limb must last longer than "the healing time of a normal fracture." *Id.* at 441 ¶ 9. Based on the evidence presented about the severity of C.G.'s injuries, the steps needed for those injuries to heal properly, and the duration of the impairment (which still existed to some extent at trial), *George* is inapposite.

5

## II.    Prosecutorial Error

¶19        Nealy argues the State committed prosecutorial misconduct by misstating the law and evidence during closing argument.  We instead decide whether prosecutorial error justifies a new trial.  *See In re Martinez*, 248 Ariz. 458, 470 ¶ 47 (2020) ("When reviewing the conduct of prosecutors in the context of 'prosecutorial misconduct' claims, courts should differentiate between 'error,' which may not necessarily imply a concurrent ethical rules violation, and 'misconduct,' which may suggest an ethical violation.").  Nealy did not object at trial, so we review for fundamental error.  *State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018).  To show fundamental error, Nealy must show there was error at trial, the error was fundamental, and he was prejudiced.  *Id.* at 142 ¶ 21.  Nealy has not made that showing.

¶20        Nealy challenges the following statement the prosecutor made to the jury during closing arguments: "[B]y striking someone repeatedly in the head while that head is up against or near a concrete wall or sidewalk, there is a reasonable risk of death."  Prosecutors have "wide latitude" when making arguments to the jury.  *State v. Morris*, 215 Ariz. 324, 336 ¶ 51 (2007) (citation omitted).  During closing arguments, the prosecutor may "summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions."  *State v. Smith*, 250 Ariz. 69, 100 ¶ 144 (2020) (citation omitted).  But a misstatement of the law is not permitted and is error.  *State v. Murray*, 250 Ariz. 543, 549–50 ¶ 19 (2021).  In evaluating closing arguments for prosecutorial error, courts consider whether the remarks "called to the jury's attention matters it should not have considered in reaching its decision" and "the probability that the jurors were in fact influenced by the remarks."  *Smith*, 250 Ariz. at 100 ¶ 144 (citation omitted).

¶21        Nealy argues, and the State concedes, that the prosecutor misstated the law because "serious physical injury" requires that the injury create a reasonable risk of death.  It does not require that the defendant's actions create a reasonable risk of death.  Accepting that the prosecutor's statement was error, we determine whether that error was fundamental and prejudicial.

¶22        The prosecutor said more than the challenged statement.  He correctly explained the elements the jury would have to find to convict Nealy of aggravated assault causing serious physical injury, and he explained how the evidence about the severity and duration of C.G.'s injuries established a "protracted impairment of his mouth[.]"  Plus, the court correctly instructed the jury on the elements of aggravated assault

causing serious physical injury, including the statutory definition of "serious physical injury." *See supra* ¶ 9; *see also* A.R.S. §§ 13-105(39), 13-1204(A)(1).

**¶23** Because the State correctly explained the elements of the crime and the court correctly instructed the jury on those elements, any confusion caused by the prosecutor's misstatement about the applicable law was cured. *See State v. Prince*, 226 Ariz. 516, 538 ¶ 89 (2011) (concluding that any confusion caused by the prosecutor's misstatement of law was cured by proper jury instructions). We presume the jury followed the court's instructions and was not influenced by the prosecutor's fleeting misstatement of the law. *State v. Newell*, 212 Ariz. 389, 403 ¶¶ 68–69 (2006). Nealy has not shown fundamental error. *See Prince*, 226 Ariz. at 538 ¶ 89.

**¶24** Nealy also argues the prosecutor's statement misrepresented the facts because Nealy did not strike C.G.'s head while it was "up against or near a concrete wall or sidewalk." Nealy instead contends that C.G. fell on the concrete and hit his head. But the State introduced video surveillance footage of the assault. So the jurors could see and discern for themselves what occurred. And the court instructed the jury that statements from counsel are not evidence. On this last point, Nealy has not shown error, let alone error that was fundamental and prejudicial.

## CONCLUSION

**¶25** We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR